ATTORNEYS FOR APPELLANT
Gregory F. Zoeller
Attorney General of Indiana

Cynthia L. Ploughe
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE
Chris M. Teagle
Muncie, Indiana



In the
# Indiana Supreme Court

No.  05S02-0906-CR-305

STATE OF INDIANA,

*Appellant (Plaintiff below),*

v.

ANTHONY W. POLLARD

*Appellee (Defendant below).*

Appeal from the Blackford Superior Court, No. 05D01-0701-FD-047
The Honorable John W. Forcum, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 05A02-0707-CR-640

**June 30, 2009**

**Rucker, Justice.**

The question presented is whether a section of the Indiana Sex Offender Registration Act that we refer to as the "residency restriction statute" constitutes retroactive punishment forbidden by the Ex Post Facto Clause contained in the Indiana Constitution. In this case the answer is yes.

**Facts and Procedural History**

On April 4, 1997, Anthony W. Pollard was convicted of a sex-related offense for which he was apparently sentenced.[1] On July 1, 2006, the residency restriction statute – Ind. Code § 35-42-4-11 – came into effect. That statute provides that a person convicted of certain sex-related crimes is classified as an "offender against children" and commits "sex offender residency offense," a Class D felony, if the person knowingly or intentionally resides within 1,000 feet of school property, a youth program center, or a public park.[2] On January 23, 2007, the State charged Pollard with violation of the residency restriction statute, and Pollard

---

[1] This case is presented to us on an abbreviated record. The facts upon which the trial court entered judgment were stipulated by the parties. The stipulated facts say nothing about the nature of the offense or the sentence imposed.

[2] At the time Pollard was charged with the instant offense Ind. Code § 35-42-4-11 (2006) read in relevant part:

> As used in this section, "offender against children" means a person required to register as a sex offender under IC 11-8-8 who has been:
>    (1) found to be a sexually violent predator under IC 35-38-1-7.5; or
>    (2) convicted of one (1) or more of the following offenses:
>        (A) Child molesting (IC 35-42-4-3).
>        (B) Child exploitation (IC 35-42-4-4(b)).
>        (C) Child solicitation (IC 35-42-4-6).
>        (D) Child seduction (IC 35-42-4-7).
>        (E) Kidnapping (IC 35-42-3-2), if the victim is less than eighteen (18) years of age.
>        (F) An offense in another jurisdiction that is substantially similar to an offense described in clauses (A) through (E) . . . .
>
> An offender against children who knowingly or intentionally:
>    (1) resides within one thousand (1,000) feet of:
>        (A) school property;
>        (B) a youth program center; or
>        (C) a public park; or
>    (2) establishes a residence within one (1) mile of the residence of the victim of the offender's sex offense; commits a sex offender residency offense, a Class D felony.

responded with a motion to dismiss contending the statute violated the ex post facto prohibition contained in Article I, section 24 of the Indiana Constitution. The parties presented the matter to the trial court based on stipulated facts as follows:

> 1. That the defendant, Anthony W. Pollard, has an ownership interest in the real estate located at 817 North Monroe Street, Hartford City, Indiana. Further, Anthony W. Pollard has had his ownership interest in the real estate for approximately the past 20 years.
>
> 2. That the defendant, Anthony W. Pollard had an ownership interest in the real estate located at 817 North Monroe Street, Hartford City, Indiana on January 12, 2007, the date the State of Indiana has alleged that the defendant committed a criminal offense under I.C. 35-42-4-11 under the above captioned cause.
>
> 3. That the residence owned and occupied by Anthony W. Pollard located at 817 North Monroe Street, Hartford City, Indiana is within one thousand (1,000) feet of school property, a youth program center or a public park.
>
> 4. That the defendant, Anthony W. Pollard was residing at the residence located at 817 North Monroe Street, Hartford City, Indiana on January 12, 2007, the date the State of Indiana has alleged that the defendant committed a criminal offense under I.C. 35-42-4-11 under the above captioned cause. The defendant resided at the residence located at 817 North Monroe Street, Hartford City, Indiana more than two (2) nights in a thirty (30) day period prior to January 12, 2007.
>
> 5. That the defendant, Anthony W. Pollard has a prior conviction for an offense listed under I.C. 35-42-4-11 (a)(2).
>
> 6. That the defendant, Anthony W. Pollard's conviction under I.C. 35-42-4-11(a)(2) occurred prior to the effective date of Indiana Code 35-42-4-11 which was on July 1, 2006.
>
> 7. That the defendant, Anthony W. Pollard has been a resident and owner of the residence located at 817 North Monroe Street, Hartford City, Indiana for at least one year prior to the effective date of I.C. 35-42-4-11.

Appellant's App. at 9-10. After entertaining arguments of counsel, submitted by way of written memoranda, the trial court granted Pollard's motion to dismiss concluding that as applied to

Pollard the residency restriction statute violates the ex post facto prohibition of Article I, section 24 of the Indiana Constitution. Appellant's App. at 19. On review, focusing primarily on the punitive impact of the statute on Pollard's property interest, the Court of Appeals agreed and affirmed the trial court's order of dismissal. State v. Pollard, 886 N.E.2d 69 (Ind. Ct. App. 2008). Although we agree the trial court's order of dismissal should be affirmed our analysis is different from that of our colleagues. We therefore grant transfer and affirm the judgment of the trial court.[3]

## Discussion

Article I, section 24 of the Indiana Constitution provides that "[n]o *ex post facto* law . . . shall ever be passed." Among other things, "[t]he *ex post facto* prohibition forbids . . . the States to enact any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.'" Weaver v. Graham, 450 U.S. 24, 28 (1981) (quoting Cummings v. Missouri, 71 U.S. (4 Wall.) 277, 325-26 (1866)). The underlying purpose of the Ex Post Facto Clause is to give effect to the fundamental principle that persons have a right to fair warning of that conduct which will give rise to criminal penalties. Armstrong v. State, 848 N.E.2d 1088, 1093 (Ind. 2006). Pollard contends the residency restriction statute imposes retroactive punishment because he committed a qualifying offense prior to July 1, 2006.

We recently determined that in evaluating ex post facto claims under the Indiana Constitution we apply what is commonly referred to as the "intent-effects" test. Wallace v. State, 905 N.E.2d 371, 378 (Ind. 2009). Under this test the court must first determine whether the legislature meant the statute to establish civil proceedings. Id. If the intention of the legislature was to impose punishment, then that ends the inquiry, because punishment results. If however the court concludes the legislature intended a non-punitive, regulatory scheme, then the court must further examine whether the statutory scheme is so punitive in effect as to negate that

---

[3] Anthony Pollard died while this case was pending on transfer. Because the issue raised in this appeal is of great public importance with a likelihood of repetition, we choose to adjudicate the claim on its merits. See Horseman v. Keller, 841 N.E.2d 164, 170 (Ind. 2006).

intention thereby transforming what was intended as a civil, regulatory scheme into a criminal penalty. Id.

A.    Whether the Legislature Intended to Impose Punishment

Whether the legislature intended the residency restriction statute to be civil or criminal is primarily a matter of statutory construction. And as we observed in Wallace for the overall Sex Offender Registration Act, "it is difficult to determine legislative intent since there is no available legislative history and the Act does not contain a purpose statement." Id. at 383 (quoting Spencer v. O'Connor, 707 N.E.2d 1039, 1043 (Ind. Ct. App. 1999)). As with the overall Act, the residency restriction statute does not contain a purpose statement. However, unlike the overall Act where some components are contained in the civil code and others in the criminal code, see Jensen v. State, 905 N.E.2d 384, 390 (Ind. 2009), the residency statute is located solely within the criminal code, see, e.g., Kansas v. Hendricks, 521 U.S. 346, 361 (1997) (noting the fact that the Kansas Sexually Violent Predator Act was placed in the probate code rather than the criminal code evinced a legislative intent to create a civil proceeding). Further, the statute contains no exception or "Grandfather Clause" exempting sex offenders who were convicted before its enactment or who owned their homes before the statute's effective date; nor is there any exemption for sex offenders who established their residences before a school, youth program center, or public park moved within 1,000 feet of them. In essence with a single exception,[4] the residency restriction statute does not appear to include a civil or regulatory component.

We do acknowledge however, that "the [overall] Act advances a legitimate regulatory purpose," namely, "public safety." Wallace, 905 N.E.2d at 383. It could thus be argued that as a part of the Act, the residency restriction statute is subsumed into this larger purpose. For this reason we conclude there is ambiguity as to whether the legislature intended to impose punishment by enacting the statute. Therefore, assuming without deciding that the legislature's

---

[4] Subsection (d) of the statute provides a mechanism for certain offenders to petition the court "not earlier than ten (10) years after the person is released from incarceration, probation, or parole" to consider "whether the person should no longer be considered an offender against children." I.C. § 35-42-4-11(d).

intent was to create a civil, non-punitive, regulatory scheme we examine whether the statute is so punitive in effect as to negate that intent.

B.      Whether the Effect of the Statute is Punitive

In assessing a statute's effects we are guided by seven factors that are weighed against each other: "[1] Whether the sanction involves an affirmative disability or restraint, [2] whether it has historically been regarded as a punishment, [3] whether it comes into play only on a finding of *scienter*, [4] whether its operation will promote the traditional aims of punishment-retribution and deterrence, [5] whether the behavior to which it applies is already a crime, [6] whether an alternative purpose to which it may rationally be connected is assignable for it, and [7] whether it appears excessive in relation to the alternative purpose assigned." Wallace, 905 N.E.2d at 379 (quoting Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-69 (1963)) (alterations in original). No one factor is determinative. "[O]ur task is not simply to count the factors on each side, but to weigh them." Id. (quoting State v. Noble, 829 P.2d 1217, 1224 (Ariz. 1992)). We address each factor in turn.

1.      *Affirmative Disability or Restraint*

When determining whether a law subjects those within its purview to an "affirmative disability or restraint," Mendoza-Martinez, 372 U.S. at 168, the Court inquires "how the effects of the Act are felt by those subject to it. If the disability or restraint is minor and indirect, its effects are unlikely to be punitive." Smith v. Doe, 538 U.S. 84, 99-100 (2003).

The disability or restraint imposed by the residency restriction statute is neither minor nor indirect. Specifically, Pollard is not allowed to live in a house he owns and in which he has resided for approximately 20 years. And, according to Pollard, the statute would "require him to incur the cost of obtaining other housing and relocating his residence." Appellee's Br. at 3. In addition, we observe that the statute prevents a sex offender from living in his or her own home even if the offender purchased the home before the law took effect or if a school or youth program center moved within 1,000 feet of the offender's home after the offender established

6

residency there.  This is a substantial housing disadvantage.  Although the statute does not affect ownership of property, it does affect one's freedom to live on one's own property.  A sex offender is subject to constant eviction because there is no way for him or her to find a permanent home in that there are no guarantees a school or youth program center will not open within 1,000 feet of any given location.  We are persuaded the first Mendoza-Martinez factor clearly favors treating the effects of the Act as punitive when applied to Pollard.

*2.      Sanctions that have Historically been Considered Punishment*

We next determine "whether [the sanction] has historically been regarded as a punishment."  Mendoza-Martinez, 372 U.S. at 168.  Restricting a person from living in certain areas is not a sanction that historically has been considered punishment.  Jurisdictions addressing this aspect of the Mendoza-Martinez test, have drawn an analogy to the historical punishment of banishment[5] and have concluded that their residency statutes are not sufficiently similar to this historical punishment.  See, e.g., People v. Leroy, 828 N.E.2d 769, 780-81 (Ill. App. Ct. 2005) ("Put simply, the restrictions placed on the defendant by [the residency statute] in no way resemble the historical punishment of banishment . . . .");  State v. Seering, 701 N.W.2d 655, 667-68 (Iowa 2005) (finding Iowa's residency statute was "far removed from the traditional concept of banishment" because it restricted only residence, allowing offenders to freely "engage in most community activities").  However, we have determined "the fact that the Act's reporting provisions are comparable to supervised probation or parole standing alone supports a conclusion that the second Mendoza-Martinez factor favors treating the effects of the Act as punitive when applied in this case."  Wallace, 905 N.E.2d at 380-81.  In like fashion, restrictions on living in certain areas is not an uncommon condition of probation or parole.  See, e.g., Ind. Code § 11-13-3-4(g)(2)(B) (providing that the parole board shall, as a condition of parole, "prohibit a parolee who is a sex offender from residing within one thousand (1,000) feet of school property . . . for the period of parole, unless the sex offender obtains written approval from the parole board");  Ind. Code § 35-38-2-2.2 (providing that as a condition of probation for a sex offender the court shall "prohibit the sex offender from residing within one thousand (1,000) feet of school property

---

[5] "Banishment" has been defined as "'punishment inflicted upon criminals, by compelling them to quit a city, place, or country, for a specific period of time, or for life.'"  United States v. Ju Toy, 198 U.S. 253, 269-70 (1905) (Brewer, J., dissenting) (quoting then-current edition of Black's Law Dictionary).

7

. . . unless the sex offender obtains written approval from the court"); <u>Fitzgerald v. State</u>, 805 N.E.2d 857, 867 (Ind. Ct. App. 2004) (observing that "[c]onditions of probation which reduce the potential for access to potential victims are reasonable"). We conclude this factor also favors treating the effects of the statute as punitive when applied to Pollard.

*3.* *Finding of Scienter*

Third, we consider "whether [the statute] comes into play only on a finding of *scienter.*" <u>Mendoza-Martinez</u>, 372 U.S. at 168. "The existence of a scienter requirement is customarily an important element in distinguishing criminal from civil statutes." <u>Wallace</u>, 905 N.E.2d at 381 (quoting <u>Kansas v. Hendricks</u>, 521 U.S. 346, 362 (1997)). If a sanction is not linked to a showing of *mens rea*, it is less likely to be intended as punishment.

The residency restriction statute applies to offenders found to be sexually violent predators or offenders convicted of either child molesting, child exploitation, child solicitation, child seduction, kidnapping, attempt or conspiracy to commit one of these offenses, or an offense in another jurisdiction substantially similar to one of these offenses. Ind. Code § 35-42-4-11. With the exception of child molesting, the underlying offenses that invoke this statute all require a finding of scienter.[6] At first blush it would thus appear this factor favors treating the effects of the residency restriction statute as punitive when applied to Pollard. However, nothing in the record mentions the offense for which Pollard was convicted. If indeed the offense were child molesting, then this factor would not be punitive as to Pollard. In the absence of evidence one way or the other on this point, we must treat the effects of the statute as non-punitive.

*4.* *The Traditional Aims of Punishment*

We next ask "whether [the statute's] operation will promote the traditional aims of punishment–retribution and deterrence." <u>Mendoza-Martinez</u>, 372 U.S. at 168. The underlying assumption is that if the statute promotes the traditional aims of punishment, the statute is more

---

[6] Child molesting as defined by Indiana Code § 35-42-4-3 (2006) requires no scienter where there is sexual intercourse or deviate sexual conduct with a child under fourteen years of age.

likely punitive than regulatory. As we have observed, "although the Mendoza-Martinez test focuses on retribution and deterrence, under [the Indiana] Constitution, the primary objective of punishment is rehabilitation. 'The penal code shall be founded on principles of reformation, and not of vindictive justice.'"[7] Wallace, 905 N.E.2d at 381 (quoting Ind. Const. art. I, § 18). In any event "[t]here is no question that the [overall] Act's deterrent effect is substantial . . . ." Jensen v. State, 905 N.E.2d 384, 393 (Ind. 2009). By prohibiting sex offenders from living in certain proscribed areas the residency restriction statute is apparently designed to reduce the likelihood of future crimes by depriving the offender of the opportunity to commit those crimes. In this sense the statute is an even more direct deterrent to sex offenders than the Act's registration and notification regime. We conclude this factor favors treating the effects of the residency statute as punitive when applied to Pollard.

5.      *Application Only to Criminal Behavior*

Under the fifth factor we consider "whether the behavior to which [the statute] applies is already a crime." Mendoza-Martinez, 372 U.S. at 168. The fact that a statute applies only to behavior that is already and exclusively criminal supports a conclusion that its effects are punitive. Wallace, 905 N.E.2d at 381. There is no question that it is the determination of guilt for a qualifying offense that exposed Pollard to further criminal liability under the residency restriction statute. We conclude this factor favors treating the effects of the residency statute as punitive when applied to Pollard.

6.      *Advancing a Non-Punitive Interest*

We next ask whether, in the words of the Supreme Court, "an alternative purpose to which [the statute] may rationally be connected is assignable for it." Mendoza-Martinez, 372 U.S. at 168-69. This statement is best translated as an inquiry into whether the Act advances a legitimate, regulatory purpose. Wallace, 905 N.E.2d at 382-83. There is no doubt that the

---

[7] "Retribution is vengeance for its own sake. It does not seek to affect future conduct or solve any problem except realizing 'justice.' Deterrent measures serve as a threat of negative repercussions to discourage people from engaging in certain behavior." Wallace, 905 N.E.2d at 381 n.12 (quoting Artway v. Attorney Gen. of N.J., 81 F.3d 1235, 1255 (3d Cir. 1996).

residency restriction statute has a purpose other than simply to punish sex offenders. As we have observed, the overall Act "advances a legitimate purpose of public safety." Id. at 383. It is certainly reasonable to conclude that restricting sex offenders from residing within one thousand feet of school property, a youth program, or a public park also advances public safety. We thus conclude that the sixth Mendoza-Martinez factor favors treating the effects of the Act as non-punitive when applied to Pollard.

*7. Excessiveness in Relation to State's Articulated Purpose*

Finally we determine "whether [the statute] appears excessive in relation to the alternative purpose assigned." Mendoza-Martinez, 372 U.S. at 169. We give this factor the greatest weight. See Wallace, 905 N.E.2d at 383-84. Although denominated as applying only to "offender[s] against children," the residency restriction statute is actually much broader. In addition to applying to offenders convicted of five discrete crimes against children: child molesting, child exploitation, child solicitation, child seduction, and kidnapping where the victim is less than eighteen years of age, the statute also applies to an offender "found to be a sexually violent predator under IC 35-38-1-7.5." In relevant part Ind. Code § 35-38-1-7.5 defines a sexually violent predator as "a person who suffers from a mental abnormality or personality disorder that makes the individual likely to repeatedly commit a sex offense (as defined in IC 11-8-8-5.2)." In turn Ind. Code § 11-8-8-5.2 defines sex offense as meaning "an offense listed in section 4.5(a) [Ind. Code § 11-8-8-4.5(a)] of this chapter." Section 4.5(a) lists seventeen (17) specific offenses that qualify a convicted person as a sex offender, including: rape, criminal deviate conduct, vicarious sexual gratification, incest, sexual battery, and promoting prostitution.[8]

---

[8] Ind. Code § 35-38-1-7.5 further defines a "sexually violent predator" in relevant part as a person who:

> (2) commits a sex offense (as defined in IC 11-8-8-5.2) while having a previous unrelated conviction for a sex offense for which the person is required to register as a sex or violent offender under IC 11-8-8;

> (3) commits a sex offense (as defined in IC 11-8-8-5.2) while having had a previous unrelated adjudication as a delinquent child for an act that would be a sex offense if committed by an adult, if, after considering

10

Although there is a rational connection to a non-punitive purpose – public safety and protection of children – the residency restriction statute applies equally to persons convicted for example of vicarious sexual gratification as a Class D felony in violation of Ind. Code § 35-42-4-5(a) as to persons convicted of rape as a Class A felony in violation of Ind. Code § 35-42-4-1(b). The statute does not consider the seriousness of the crime, the relationship between the victim and the offender, or an initial determination of the risk of re-offending. See, e.g., Weems v. Little Rock Police Dept., 453 F.3d 1010, 1017 (8th Cir. 2006) (noting "particularized risk assessment of sex offenders . . . increases the likelihood that the residency restriction is not excessive in relation to the rational purpose of minimizing the risk of sex crimes against minors"). Restricting the residence of offenders based on conduct that may have nothing to do with crimes against children, and without considering whether a particular offender is a danger to the general public, the statute exceeds its non-punitive purposes. We are persuaded this factor favors treating the effects of the statute as punitive when applied to Pollard.

In summary, of the seven factors identified by Mendoza-Martinez as relevant to the inquiry of whether a statute has a punitive effect, only two factors – finding of scienter and advancing a non-punitive interest – point in favor of treating the effects of the Act as non-punitive. The remaining factors, particularly the factor of excessiveness, point in the other direction.

## Conclusion

Anthony Pollard was charged with, convicted of, and apparently served the sentence for a crime qualifying him as an offender against children before the residency restriction statute was enacted. We conclude that as applied to Pollard, the statute violates the prohibition on ex post facto laws contained in the Indiana Constitution because it imposes burdens that have the effect

---

expert testimony, a court finds by clear and convincing evidence that the person is likely to commit an additional sex offense; or

(4) commits a sex offense (as defined in IC 11-8-8-5.2) while having had a previous unrelated adjudication as a delinquent child for an act that would be a sex offense if committed by an adult, if the person was required to register as a sex or violent offender under IC 11-8-8-5(b)(2).

of adding punishment beyond that which could have been imposed when his crime was committed. The trial court thus properly dismissed the information charging Pollard with a violation of the statute. See State v. Davis, 898 N.E.2d 281, 285 (Ind. 2008) (declaring "courts have the inherent authority to dismiss criminal charges where the prosecution of such charges would violate a defendant's constitutional rights"). We affirm the trial court's judgment.

Shepard, C.J., and Dickson and Sullivan, JJ., concur.

Boehm, J., concurs in result and concurs in the opinion except as to Part B3, believing the absence of a scienter element for certain forms of child molesting is not significant in evaluating the punitive character of this statute.