[994 NYS2d 819]

MICHAEL DEVINE, Petitioner, v ANTHONY J. ANNUCCI, Acting
Commissioner, Department of Corrections and Community
Supervision, et al., Respondents.

Supreme Court, Kings County, September 29, 2014

APPEARANCES OF COUNSEL

*Brooklyn Defender Services* (*Lisa Schreibersdorf* and *Susannah Karlsson* of counsel) and *Appellate Advocates* (*Lynn W.L. Fahey* and *Lisa Napoli* of counsel) for petitioner.

*Eric T. Schneiderman, Attorney General* (*Inna Ringh* of counsel), for respondents.

## OPINION OF THE COURT

Yvonne Lewis, J.

Petitioner, Michael Devine, brings this petition seeking a declaratory judgment, and relief in the nature of prohibition, pursuant to article 78 of the Civil Practice Law and Rules. He is contesting the removal of petitioner from his Brooklyn residence, together with the restriction of his movement by the respondents pursuant to section 259-c (14) of the Executive Law. The petitioner seeks an order that Executive Law § 259-c (14) is unconstitutional as applied to himself because it violates his First Amendment right to freely associate with his own family. The petitioner also contends that it interferes with his right to be free from ex post facto punishment, as well as, that it is unconstitutional on its face because it violates the substantive due process rights of himself and all other individuals to whom the statute applies by impeding the right to free association and to intrastate travel. Respondents oppose the petition.

Background

Mr. Devine currently resides in Brooklyn, New York. He lives with his fiancée, Anna Losito, and her three children from a previous relationship. The petitioner also has two daughters from previous relationships. Mr. Devine's mother and sister live, separately, in Brooklyn. In 2002, the petitioner was convicted of three counts of first-degree sexual abuse stemming from an April 23, 2000 assault of a 17-year-old female. At the time of the incident, the petitioner was 22 years old. On November 6, 2002, he was sentenced to three concurrent prison terms of seven years. In November 2008, the petitioner was conditionally released from prison. Subsequent to his 2008 conditional release, five years' postrelease supervision (PRS) was added to the petitioner's prison sentence pursuant to Executive Law § 259-c (14). Mr. Devine was deemed a low level sex offender upon being conditionally released. PRS was removed in 2010 due to ongoing litigation regarding the imposition of PRS, and reinstated in March of 2012 as a result of a favorable appeal by the Kings County District Attorney's Office.

The Department of Corrections and Community Supervision (DOC) began enforcing the reinstatement in September of 2013. In February of 2014, DOC informed the petitioner that the residence that he shares with Ms. Losito and her children was not compliant with Executive Law § 259-c (14). A monitoring ankle bracelet was placed on the petitioner while he searched for a new home. On March 21, 2014, the petitioner was instructed by his parole officer to report to a "three-quarter house" while he searched for a home that was compliant with the Executive Law. The petitioner alleges that the three-quarter house is also out of compliance with the law. Mr. Devine has not returned to the home he shares with Ms. Losito since being instructed to report to the three-quarter house. He currently lives with his mother in Brooklyn.

Discussion

The Sexual Assault Reform Act that went into effect on February 1, 2001 is housed, in part, within the Executive Law, and at the time of enactment read as follows:

> "notwithstanding any other provision of law to the contrary, where a person serving a sentence for an offense defined in article one hundred thirty, one hundred thirty-five or two hundred sixty-three of the penal law or section 255.25 of the penal law and the victim of such offense was under the age of eighteen at the time of such offense, is released on parole or conditionally released pursuant to subdivision one or two of this section, the board shall require, as a mandatory condition of such release, that such sentenced offender shall refrain from knowingly entering into or upon any *school grounds*, as that term is defined in *paragraph (a) of subdivision fourteen of section 220.00 of the penal law*, or any other facility or institution primarily used for the care or treatment of persons under the age of eighteen while one or more of such persons under the age of eighteen are present. . . . Nothing in this subdivision shall be construed as restricting any lawful condition of supervision that may be imposed on such sentenced offender." (Executive Law § 259-c [14], as added by L 2000, ch 1, § 8 [emphasis added].)

Paragraph (a) of Penal Law § 220.00 (14) defines "[s]chool grounds" as "in or on or within any building, structure, athletic playing field, playground or land contained within the real prop-

erty boundary line of a public or private elementary, parochial, intermediate, junior high, vocational, or high school."

In 2005, the Executive Law was amended wherein the words "paragraph (a) of" were removed (Executive Law § 259-c [14], as amended by L 2005, ch 544, § 2). This, effectively, applied both paragraphs (a) and (b) of Penal Law § 220.00 (14) for the purposes of defining "school grounds" pursuant to the Executive Law. Paragraph (b) of Penal Law § 220.00 (14) expands the definition of "[s]chool grounds" to also include

> "any area accessible to the public located within one thousand feet of the real property boundary line comprising any such school or any parked automobile or other parked vehicle located within one thousand feet of the real property boundary line comprising any such school. For the purposes of this section an 'area accessible to the public' shall mean sidewalks, streets, parking lots, parks, playgrounds, stores and restaurants."

One is clearly prohibited from knowingly entering an area that is accessible to the public that is within 1,000 feet of any school, whether public or private, at any time, and also prohibited from entering other institutions which depend on the presence of persons under the age of 18.

Counsel for the petitioner submits a map that delineates the areas in Brooklyn where the petitioner is prohibited from entering, and consequentially from living, pursuant to the statute. The respondents reject the map, but do not provide a map to refute the claims of the petitioner. The petitioner argues that Executive Law § 259-c (14) constitutes an ex post facto punishment, as the statute was enacted after the commission of the petitioner's crime, and increases the penalty imposed by exiling the petitioner from his home and community with the possibility of increased imprisonment should the petitioner not comply with this statute. Respondents argue that although the statute places restrictions on the petitioner, it does not ban the petitioner from all of New York City, and is therefore not significantly punitive to be deemed an unconstitutional ex post facto law.

Article I, § 10 of the US Constitution prohibits the enactment of any law "that makes an action, done before the passing of the law, and which was innocent when done, criminal; and punishes such action" and "[e]very law that changes the punishment, and inflicts a greater punishment, than the law annexed

to the crime, when committed" (*Calder v Bull*, 3 US 386, 390 [1798]). The Ex Post Facto Clause makes it unconstitutional to increase the punishment for a crime after it is committed (*Collins v Youngblood*, 497 US 37, 42 [1990], quoting *Beazell v Ohio*, 269 US 167, 169-170 [1925]). However, the court's inquiry does not end there. The court must engage in an analysis of the legislature's intent, and the manner in which the statute manifests itself. The Supreme Court in *Smith v Doe* (538 US 84 [2003]) reiterated the framework for determining whether a statute can be deemed an ex post facto law. The Court, in considering whether an Alaska statute requiring sex offenders to register could withstand an ex post facto analysis, states that courts must ascertain whether

> "the intention of the legislature was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is so punitive either in purpose or effect as to negate [the State's] intention to deem it civil" (*id.* at 92 [internal quotation marks and citation omitted]).

The first step in the analysis is determining whether the legislature intended for the statute to be civil or punitive in nature. Deference must be given to the legislature's stated intention, and only sufficient proof can be utilized to negate that intention thereby determining whether a civil remedy is in fact a criminal penalty (*id.*). In arguing that the legislature's intent was to punish sex offenders, the petitioner states that enactment of the 2005 amendment to the Executive Law created an enormous exclusion zone that includes a majority of New York City, but for a few remote areas. Petitioner believes that the legislature could have foreseen that Executive Law § 259-c (14) and the related amendment would lead to the banishment (a form of punishment) of sex offenders from living in or visiting New York City. The petitioner argues that the strong and fear inducing language used by Assemblyman Harvey Weisenberg in support of the 2005 amendment suggests that the intent was to punish sex offenders. Petitioner avers that Assemblyman Weisenberg's stated goal of protecting the youngest and most vulnerable members of society from the risk posed by sex offenders is not supported by any documented evidence, research, or crime statistics.

A statute may not be adequately supported by research, but the lack of evidentiary support is not enough to undermine the

stated intent of the statute. Barring sex offenders from being within 1,000 feet of school grounds is an incidental consequence of the statute, and does not automatically convert a civil prohibition into a criminal punishment (*see Smith*, 538 US at 93-94 ["where a legislative restriction is an incident of the State's power to protect the health and safety of its citizens, it will be considered as evidencing an intent to exercise that regulatory power, and not a purpose to add to the punishment" (internal quotation marks and citation omitted)]).

The court must "reject the legislature's manifest intent only where a party challenging the statute provides the clearest proof that the statutory scheme [is] so punitive either in purpose or effect as to negate [the State's] intention to deem it civil" (*Kansas v Hendricks*, 521 US 346, 361 [1997] [internal quotation marks and citation omitted]). Although not dispositive or exhaustive, courts are guided by the following factors:

> "Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned" (*Kennedy v Mendoza-Martinez*, 372 US 144, 168-169 [1963] [citations omitted]).

The petitioner argues that despite the uncertainty as to the legislative intent, Executive Law § 259-c (14) is so punitive in effect that it negates any benign intent on the part of the legislature. Counsel for the petitioner avers that the extent to which Executive Law § 259-c (14) restrains the movement of the petitioner, it effectively banishes the petitioner from large swaths of New York City, with concern particularly of the near total banishment from Brooklyn. The U.S. Supreme Court in *United States v Ju Toy* (198 US 253 [1905]) cites Black's Law Dictionary, which defines banishment as "a punishment inflicted upon criminals, by compelling them to *quit a city, place, or country*, for a specific period of time, or for life" (*id.* at 269-270 [emphasis added]). The court is mindful that certain restriction may be placed on individuals after being released from prison. The extent to which Executive Law § 259-c (14) prohibits

the petitioner from knowingly entering a very substantial portion of Brooklyn puts its limitations on a par with banishment in the eyes of this court.

Respondents argue that the restraint on where the petitioner can reside is minimal. They further argue that there are areas of New York State, outside the borough of Brooklyn, where the petitioner may reside. This argument seems to reflect perfectly the precise definition of banishment articulated above. Requiring a person not only to quit his place of residence but also to move out and stay out of an entire borough, is far from minimal. This, if allowable, would be a banishment from an area that is the most populous of New York City's five boroughs, with about 2.6 million people,* as well as the second-largest in area. Counsel for the petitioner submits a map to provide a visual display of the extent to which the petitioner is essentially banished from the borough. Even in the absence of this map, this court is not ignorant of the fact that New York City is a metropolis densely populated by schools and other institutions that primarily cater to individuals under the age of 18. This is not a residency restriction, but a comprehensive movement restriction. The petitioner may not "knowingly enter" any area within 1,000 feet of the boundary line of school grounds. Assuming, arguendo, the truth of the map produced by the petitioner's attorney and following the letter of the law, the petitioner is, in effect, trapped or locked in once he enters a compliant area, to say nothing of the fact that he will have had to be non-compliant to reach the place of compliance.

It cannot be disputed that protecting children from harm is a goal that should be legislatively advanced. The petitioner argues, however, that the lack of individual assessment or a case by case determination renders the statute punitive in effect. The petitioner cites a DOC family guide that states recidivism is less likely if a stable home, family and work environment is established; DOC has removed the petitioner from his home, which contradicts the studies and observations put forth by the agency. Requiring the petitioner to move from his home only disrupts any sense of stability that currently exists. Additionally, the petitioner maintains that the logic behind the statute is questionable, as the presumption is that children are only threatened by sex offenders when on or within 1,000 feet of

---

* United States Census Bureau, State & County QuickFacts, Kings County (Brooklyn Borough), http://quickfacts.census.gov/qfd/states/36/36047.html (accessed Mar. 28, 2014).

school grounds as defined by the Penal Law or that that is the only place that sex offenders go to prey on children. Empirically, children in New York City often commute to and from areas that are well beyond 1,000 feet of school grounds without adult supervision. Further, the law applies to all offenders where the victim of the particular crime was under the age of 18. Petitioner's counsel notes the fact that the law treats a person 17 years of age like an adult, in some circumstances (*see* Penal Law § 130.05 [3] [a] [a person 17 years of age or older capable of giving consent]). Mr. Devine proffers that the crime committed was not a crime against a child as the victim was 17 years of age at the time. Individually assessing the risk each sex offender presents to those under the age of 18 would allow a fairer assessment of who should be required to "suffer" the punishment of movement restriction to protect children under the age of 18.

Case law supports the court's opinion that the lack of individual assessment, in light of the substantial restrictions placed on the petitioner, renders the statute punitive in effect (*see e.g. State v Pollard*, 908 NE2d 1145, 1153 [Ind 2009] ["Restricting the residence of offenders based on conduct that may have nothing to do with crimes against children, and without considering whether a particular offender is a danger to the general public, the statute exceeds its non-punitive purposes. We are persuaded this factor favors treating the effects of the statute as punitive when applied to Pollard"]; *Commonwealth v Baker*, 295 SW3d 437, 446 [Ky 2009] ["Given the drastic consequences of Kentucky's residency restrictions, and the fact that there is no individual determination of the threat a particular registrant poses to public safety, we can only conclude that KRS 17.545 is excessive with respect to the nonpunitive purpose of public safety"]).

Respondents urge the court to follow the line of reasoning in the *Matter of Williams v Department of Corr. & Community Supervision* (43 Misc 3d 356 [2014]), which upheld the constitutionality of Executive Law § 259-c (14). However, *Matter of Williams* only serves to reinforce the notion that individual assessment is imperative in determining the risk associated with each sex offender, as each case presents novel facts. There are key differences between the facts in *Matter of Williams* and the instant matter. In *Matter of Williams* the petitioner's victim was a nine-year-old girl. Additionally, the petitioner in *Matter of Williams* sought to remain in Manhattan although his wife lived

in the Bronx, his child lived in Philadelphia, and he had no particular ties to the borough or a specific apartment to return to upon being released from prison. In the instant matter, the petitioner has roots and ties to Brooklyn. He has an established residence with his fiancée and her children. The petitioner also has close family members in Brooklyn. Importantly, as it relates to the actual crime, the petitioner's victim was 17 years of age, and, arguably, can be considered not to be a child. (*See* Penal Law § 130.05 [3] [a].) Further, upon release, the petitioner was designated low risk by the Board of Examiners of Sex Offenders. However, the petitioner is categorically grouped with all other sex offenders whose victims were under the age of 18 at the time of the crime. Therefore, the petitioner is viewed and treated in the same light as sex offenders who have been deemed to present a high risk of danger to children. Such an outcome renders the statute punitive when considering the instant circumstances. In attempting to minimize the risk presented to minors, individually assessing each sex offender would ensure that the movement restrictions put in place are not punitively excessive.

The court finds that Executive Law § 259-c (14) as applied to the petitioner violates the Ex Post Facto Clause of the Constitution. As such, the petitioner's remaining arguments are denied as moot. The petitioner is permitted to reside in his Brooklyn residence. The petition is granted in accordance with the court's decision.