FILED

08/31/2017, 9:22 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Alan D. Wilson
Kokomo, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Douglas Kirby,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

August 31, 2017

Court of Appeals Case No.
34A02-1609-CR-2060

Appeal from the Howard Superior
Court

The Honorable George A.
Hopkins, Judge

Trial Court Cause No.
34D04-1001-FD-11

**Bradford, Judge.**

# Case Summary

On November 5, 2010, Appellant-Petitioner Douglas Kirby pled guilty to one count of Class D felony child solicitation. Kirby was sentenced to eighteen months on probation, which he successfully completed. Under the terms of his probation, Kirby was granted explicit permission to enter school property for the purpose of observing his son's school activities. He was also required to register as a sex offender for a term of ten years. Kirby's conviction was thereafter reduced to a Class A misdemeanor. Despite the reduction in his sentence, the requirement that he register as a sex offender remained in place.

On July 1, 2015, the Unlawful Entry Statute[1] ("the Statute") went into effect. The Statute makes it a Level 6 felony for individuals convicted of certain crimes to enter onto school property. It is undisputed that the Statute applies to Kirby.

Kirby filed an amended petition for post-conviction relief ("PCR") on June 20, 2016.[2] Following an evidentiary hearing, the post-conviction court denied Kirby's amended PCR petition. Kirby appealed, arguing that the post-conviction court erred in denying his amended PCR petition because the Statute (1) is unconstitutional as applied to him because it amounts to retroactive punishment in violation of the Ex Post Facto Clause contained in the Indiana Constitution ("the Ex Post Facto Clause"); (2) violates his due

---

[1] Ind. Code § 35-42-4-14.

[2] Kirby's original PCR petition was filed on April 15, 2016.

process interest in the care, custody, and control of his son; and (3) is unconstitutionally vague. Review of the facts and circumstances of this case convince us that as applied to Kirby, the Statute is unconstitutional as it constitutes a retroactive punishment in violation of the Ex Post Facto Clause. We therefore reverse the judgment of the post-conviction court as to the enforcement of the Unlawful Entry Statute but leave in place Kirby's underlying conviction for Class D felony child solicitation.

## Facts and Procedural History

On January 11, 2010, Kirby was charged with Class C felony child solicitation. In charging Kirby, the State alleged that Kirby, being at least twenty-one years old, "did knowingly or intentionally solicit a Child presumed to be the age of 15, a child at least fourteen years of age but less than sixteen years of age, to engage in sexual intercourse, said solicitation having been accomplished by the use of a computer network[.]" Appellant's App. Vol. II, p. 15. On November 5, 2010, Kirby pled guilty to the lesser-included offense of Class D felony child solicitation.

The trial court accepted Kirby's plea, entered judgment of conviction for Class D felony child solicitation, and sentenced him to a term of eighteen months, all of which was suspended to probation. The trial court imposed both the standard rules of probation and the special recommended probation conditions for adult sex offenders on Kirby, with the exception being that the trial court explicitly granted Kirby permission to enter onto school property for the

purpose of attending and observing his son's school activities.[3] Kirby was also ordered to register as a sex offender for a term of ten years.

[6] Kirby successfully completed all of the terms of his probation and, on November 21, 2014, petitioned to have his conviction reduced to a misdemeanor. On February 10, 2015, the trial court granted Kirby's petition, reducing Kirby's conviction to a Class A misdemeanor.

[7] On July 1, 2015, the Statute went into effect. The Statute defines a serious sex offender as a person required to register as a sex offender and who has convicted of certain offenses, including child solicitation. Ind. Code § 35-42-4-14(a)(1)(F). The Statute provides that a serious sex offender "who knowingly or intentionally enters school property commits unlawful entry by a serious sex offender, a Level 6 felony." Ind. Code § 35-42-4-14(b). As is stated above, it is undisputed that the Statute applies to Kirby.

[8] After being notified of the Statute's application, Kirby filed a PCR petition on April 16, 2016, and an amended PCR petition on June 20, 2016. Following an evidentiary hearing, the post-conviction court denied Kirby's amended PCR petition. This appeal follows.

# Discussion and Decision

---

[3] At all times relevant to this case, Kirby had custody of his now-teenage son. His son was, and continues to be, involved in numerous school activities.

Kirby contends that the post-conviction court erred in denying his amended PCR petition because the unlawful entry statute is unconstitutional as applied to him because it amounts to retroactive punishment in violation of the Ex Post Facto Clause.[4] Alternatively, Kirby contends that the unlawful entry statute (1) violates his due process interest in the care, custody, and control of his son and (2) is unconstitutionally vague.

# I. Standard of Review

Post-conviction procedures do not afford the petitioner with a super-appeal. *Williams v. State*, 706 N.E.2d 149, 153 (Ind. 1999). Instead, they create a narrow remedy for subsequent collateral challenges to convictions, challenges which must be based on grounds enumerated in the post-conviction rules. *Id*. A petitioner who has been denied post-conviction relief appeals from a negative judgment and as a result, faces a rigorous standard of review on appeal. *Dewitt v. State*, 755 N.E.2d 167, 169 (Ind. 2001); *Colliar v. State*, 715 N.E.2d 940, 942 (Ind. Ct. App. 1999), *trans. denied*.

Post-conviction proceedings are civil in nature. *Stevens v. State*, 770 N.E.2d 739, 745 (Ind. 2002). Therefore, in order to prevail, a petitioner must establish his

---

[4] We have previously found similar ex post facto challenges to be timely even before the appellant has been charged with violating the Statute. *See McVey v. State*, 56 N.E.3d 674, 679 n.9 (Ind. Ct. App. 2016) (quoting *Smith v. Wis. Dep't of Agric.*, 23 F.3d 1134, 1141) (7th Cir. 1994) for the proposition that a person "should not be required to face the Hobson's choice between forgoing behavior that he believes to be lawful and violating the challenged law at the risk of prosecution"); *see also Greer v. Buss*, 918 N.E.2d 607, 614 (Ind. Ct. App. 2009) (acknowledging that a person need not first expose himself to actual arrest or prosecution to be entitled to challenge whether a particular statute is unconstitutional as applied to him).

claims by a preponderance of the evidence.  Ind. Post-Conviction Rule 1(5); *Stevens*, 770 N.E.2d at 745.  When appealing from the denial of a PCR petition, a petitioner must convince this court that the evidence, taken as a whole, "leads unmistakably to a conclusion opposite that reached by the post-conviction court."  *Stevens*, 770 N.E.2d at 745.  "It is only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, that its decision will be disturbed as contrary to law."  *Godby v. State*, 809 N.E.2d 480, 482 (Ind. Ct. App. 2004), *trans. denied*.  The post-conviction court is the sole judge of the weight of the evidence and the credibility of the witnesses.  *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004).  We therefore accept the post-conviction court's findings of fact unless they are clearly erroneous but give no deference to its conclusions of law.  *Id*.

## II.  Constitutionality of the Statute as Applied to Kirby[5]

[12]     Article I, section 24 of the Indiana Constitution provides that "[n]o ex post facto law ... shall ever be passed."  Among other things, "[t]he ex post facto prohibition forbids ... the States to enact any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.'"  *Weaver v.*

---

[5] Seemingly given the post-conviction court's statement that Kirby did not ask the court to consider the constitutionality of the Statue, the State chose not to address the merits of Kirby's claim that the Statute was unconstitutional as applied to him because it amounted to a retroactive punishment in violation of the Ex Post Facto Clause.  Instead, the State framed its argument as whether the Statute impacted the knowing and voluntary nature of Kirby's guilty plea.  Despite the post-conviction court's statement to the contrary, review of Kirby's post-conviction pleadings demonstrate that Kirby did challenge the constitutionality of the Statute before the post-conviction court.  As such, because we believe Kirby sufficiently challenged the constitutionality of the Statute below, we will decide Kirby's claims on appeal as they were presented by Kirby.

*Graham*, 450 U.S. 24, 28, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981) (quoting *Cummings v. Missouri*, 71 U.S. (4 Wall.) 277, 325-26, 18 L.Ed. 356 (1866)). The underlying purpose of the Ex Post Facto Clause is to give effect to the fundamental principle that persons have a right to fair warning of that conduct which will give rise to criminal penalties. *Armstrong v. State*, 848 N.E.2d 1088, 1093 (Ind. 2006).

*State v. Pollard*, 908 N.E.2d 1145, 1148-49 (Ind. 2009).

[13] In 2009, the Indiana Supreme Court determined that in evaluating ex post facto claims under the Indiana Constitution, Indiana Courts apply what is commonly referred to as the "intent-effects" test. *Id*. at 1149 (citing *Wallace v. State*, 905 N.E.2d 371, 378 (Ind. 2009)).

> Under this test the court must first determine whether the [Indiana General Assembly ("the General Assemblly")] meant the [S]tatute to establish civil proceedings. [*Wallace*, 905 N.E.2d at 378]. If the intention of the legislature was to impose punishment, then that ends the inquiry, because punishment results. If, however the court concludes the legislature intended a non-punitive, regulatory scheme, then the court must further examine whether the statutory scheme is so punitive in effect as to negate that intention thereby transforming what was intended as a civil, regulatory scheme into a criminal penalty. *Id*.

*Id*.

## A. Whether the General Assembly Intended to Impose Punishment

[14] Whether the General Assembly intended for the Statute to be civil or criminal is primarily a matter of statutory construction. *Id*.

And as we observed in *Wallace* for the overall Sex Offender Registration Act [("the Act")], "it is difficult to determine legislative intent since there is no available legislative history and the Act does not contain a purpose statement." [905 N.E.2d at 383] (quoting *Spencer v. O'Connor*, 707 N.E.2d 1039, 1043 (Ind. Ct. App. 1999)).

*Id*.

In *McVey*, we considered whether the General Assembly intended for the Statute to be civil or criminal in nature. 56 N.E.3d at 679-80. We noted that "[b]ecause there is no available legislative history and the Act does not contain a purpose statement, our Supreme Court has consistently assumed without deciding that the legislature's intent in passing the Act was to create a civil, regulatory, non-punitive scheme, and then moved to the second part of the test." *Id*. at 680. We then made the same assumption, again without deciding the question, and moved on to the second prong of the analysis. *Id*. We will do the same here.

## B. Whether the Effect of the Statute is Punitive

In assessing a statute's effects we are guided by seven factors that are weighed against each other: "[1] Whether the sanction involves an affirmative disability or restraint, [2] whether it has historically been regarded as a punishment, [3] whether it comes into play only on a finding of scienter, [4] whether its operation will promote the traditional aims of punishment-retribution and deterrence, [5] whether the behavior to which it applies is already a crime, [6] whether an alternative purpose to which it may rationally be connected is assignable for it, and [7] whether it appears excessive in relation to the alternative purpose assigned."

> *Wallace*, 905 N.E.2d at 379 (quoting *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168–69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963)) (alterations in original). No one factor is determinative. "[O]ur task is not simply to count the factors on each side, but to weigh them." *Id.* (quoting *State v. Noble*, 171 Ariz. 171, 829 P.2d 1217, 1224 (1992)).

*Pollard*, 908 N.E.2d at 1150 (brackets in original). We address each factor in turn.

### *1. Affirmative Disability or Restraint*

[17] 
> When determining whether a law subjects those within its purview to an "affirmative disability or restraint," *Mendoza-Martinez*, 372 U.S. at 168, 83 S.Ct. 554, the Court inquires "how the effects of the Act are felt by those subject to it. If the disability or restraint is minor and indirect, its effects are unlikely to be punitive." *Smith v. Doe*, 538 U.S. 84, 99-100, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003).

*Id.*

[18] In this case, the disability or restraint imposed by the Statute is neither minor nor indirect. Review of the record reveals that in sentencing Kirby in 2010, the trial court explicitly gave Kirby permission to enter school property for the purpose of attending and observing "activities involving his son." Appellant's App. Vol. II, p. 22. Kirby was permitted to do so for a period of five years before the Statute went into effect. Importantly, the record is devoid of any suggestion that Kirby behaved inappropriately at any time while on school

property.  Given these facts, we are persuaded that this factor clearly favors treating the effects of the Statute as punitive as applied to Kirby.

### 2.  *Sanctions that Have Historically been Considered Punishment*

[19]    "We next determine 'whether [the sanction] has historically been regarded as a punishment.'" *Pollard*, 908 N.E.2d at 1150 (quoting *Mendoza-Martinez*, 372 U.S. at 168) (brackets in original).  Generally speaking, schools—especially school sporting events—have been open to members of the public.  It seems reasonable to assume, therefore, that the act of restricting an individual from entering school property has historically been considered a form of punishment, whether for an act committed on school grounds or in the community.  This is especially true considering that until the Statute went into effect, Kirby had been permitted to enter school property for the purpose of observing his son's activities, even after he pled guilty to and was convicted of child solicitation. As such, we are persuaded that this factor also favors treating the effects of the Statute as punitive as applied to Kirby.

### 3.  *Finding of Scienter*

[20]    Third, we consider "whether [the statute] comes into play only on a finding of *scienter*." *Mendoza-Martinez*, 372 U.S. at 168, 83 S.Ct. 554.  "The existence of a scienter requirement is customarily an important element in distinguishing criminal from civil statutes." *Wallace*, 905 N.E.2d at 381 (quoting *Kansas v. Hendricks*, 521 U.S. 346, 362, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997)).  If a sanction is not linked to a showing of *mens rea*, it is less likely to be intended as punishment.

*Id.* at 1151 (emphases in original).

[21] The Statute includes a showing of *mens rea*, *i.e.*, that the serious sex offender "knowingly or intentionally" enters school property. Ind. Code § 35-42-4-14(b). Also, child solicitation, the underlying qualifying offense that invoked the Statute in this case, requires a finding of scienter. *See* Ind. Code § 35-42-4-6. As such, it would appear that this factor favors treating the effects of the Statute as punitive as applied to Kirby.

### 4. *The Traditional Aims of Punishment*

[22] We next consider whether the Statute's operation will promote the traditional aims of punishment. *Wallace*, 905 N.E.2d at 381. Under the Indiana Constitution, the primary objective of punishment is rehabilitation. *Id.* (citing Ind. Const. art. 1, § 18). "And there are other objectives including the need to protect the community by sequestration of the offender, community condemnation of the offender, as well as deterrence." *Id.* (citing *Abercrombie v. State*, 441 N.E.2d 442, 444 (Ind. 1982)).

[23] "'Deterrent measures serve as a threat of negative repercussions to discourage people from engaging in certain behavior.'" *Id.* n.12 (quoting *Artway v. Attorney Gen. of N.J.*, 81 F.3d 1235, 1255 (3d Cir. 1996)). In *Pollard*, the Indiana Supreme Court found that the residency restriction statute, which limits where sex offenders can reside, was an "even more direct deterrent to sex offenders than the [Indiana Sex Offender Registration Act]'s registration and notification regime." 908 N.E.2d at 1152. One may reasonably assume that like the

residency restriction statute, the Statute is designed to reduce the likelihood of future crimes by depriving the offender the opportunity to commit those crimes. In this sense, the Statute is a direct deterrent to sex offenders. We therefore find the Indiana Supreme Court's finding with regard to this factor in *Pollard* to be instructive and are similarly persuaded that this factor favors treating the effects of the Statute as punitive as applied to Kirby.

### 5. *Application Only to Criminal Behavior*

"Under the fifth factor we consider 'whether the behavior to which [the Statute] applies is already a crime.'" *Id*. (quoting *Mendoza-Martinez*, 372 U.S. at 168). "The fact that a statute applies only to behavior that is already and exclusively criminal supports a conclusion that its effects are punitive." *Id*. (citing *Wallace*, 905 N.E.2d at 381). In *Pollard*, the Indiana Supreme Court noted that "[t]here is no question that it is the determination of guilt for a qualifying offense that exposed Pollard to further criminal liability under the residency restriction statute. We conclude this factor favors treating the effects of the residency statute as punitive when applied to Pollard." *Id*. We follow the logic employed by the Indiana Supreme Court and conclude that because there is no question that it was the determination of guilty for a qualifying offense that exposed Kirby to further criminal liability under the Statute, this factor favors treating the effects of the Statute as punitive as applied to Kirby.

### 6. *Advancing a Non-Punitive Interest*

We next ask whether, in the words of the Supreme Court, "an alternative purpose to which [the statute] may rationally be

connected is assignable for it." *Mendoza-Martinez*, 372 U.S. at 168-69, 83 S.Ct. 554. This statement is best translated as an inquiry into whether the Act advances a legitimate, regulatory purpose. *Wallace*, 905 N.E.2d at 382-83.

*Id.* There is no doubt that the Statute has a purpose other than to simply punish sex offenders, that being to promote public safety and to protect children. It is certainly reasonable to conclude that restricting sex offenders, especially those convicted of acts against children, from entering school property advances public safety and helps to protect children. As such, this factor clearly favors treating the Statute as non-punitive as applied to Kirby.

### 7. *Excessiveness in Relation to State's Articulated Purpose*

Finally, we determine whether the unlawful entry statute "'appears excessive in relation to the alternative purpose assigned.'" *Wallace*, 905 N.E.2d at 383 (quoting *Mendoza-Martinez*, 372 U.S. at 169). "We give this factor the greatest weight." *Pollard*, 908 N.E.2d 1145, 1153 (Ind. 2009).

It is undisputed that the unlawful entry statute applies to Kirby. It is also undisputed that there are unquestionably legitimate, non-punitive purposes of the Statute—public safety and protection of children. The Statute, however, does not consider the seriousness of the crime, the relationship between the victim and the offender, or an initial determination of the risk of re-offending. *See id.* (noting that the residentiary restrictions statute which applies to certain sex offenders failed to consider the seriousness of the offender's crime, the relationship between the victim and the offender, or an initial determination of

the risk of re-offending). In considering whether the residentiary restrictions statute was unconstitutional as applied to a particular offender, the Indiana Supreme Court found that by restricting offenders "without considering whether a particular offender is a danger to the general public, the statute exceeds its non-punitive purposes." *Id*. We believe that this logic applies equally to the Statute.

[28] At the time of Kirby's sentencing, the trial court explicitly granted Kirby permission to enter school property for the purpose of observing activities involving his son. It is unreasonable to think that the trial court would have made this exception had it believed Kirby to be a danger to society. Kirby entered school property for the purpose of observing his son's activities for nearly five years before the Statute went into effect. Importantly, the record is devoid of any suggestion that Kirby behaved inappropriately at any time while on school property. Also, by the time the Statute went into effect, Kirby had completed all forms of punishment imposed by the trial court, except for his continued registration on the sex offender registry.

[29] To suddenly deny Kirby of the opportunity to attend his son's activities for no reason other than his prior conviction is excessive. As such, we are persuaded that this factor favors treating the effects of the Statute as punitive as applied to Kirby.

# Conclusion

[30] After considering each of the above-discussed factors, we conclude that the Statute is unconstitutional as applied to Kirby because it amounts to retroactive punishment in violation of the Ex Post Facto Clause. Having reached this conclusion, we need not consider whether the Statute violates Kirby's due process interest in the care, custody, and control of his son, or is unconstitutionally vague.

[31] The judgment of the post-conviction court is reversed only as to the enforcement of the Unlawful Entry Statute.

Baker, J., and Mathias, J., concur.