FILED

Jul 01 2016, 8:24 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Lisa M. Johnson
Brownsburg, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Richard J. McVey,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

July 1, 2016

Court of Appeals Case No.
73A04-1601-CR-12

Appeal from the Shelby Circuit
Court

The Honorable Charles D.
O'Connor, Judge

Trial Court Cause No.
73C01-0206-FA-5

**Vaidik, Chief Judge.**

# Case Summary

Richard J. McVey was convicted of Class C felony child molesting for molesting his half-sister in 2001. After the molestation, the legislature amended the Indiana Sex Offender Registration Act to require lifetime registration for offenders like McVey, as opposed to the previous requirement of ten years. It also enacted the unlawful-entry statute, which makes it a crime for a person who is required to register as a sex offender and who is convicted of child molesting to enter school property. McVey contends that both enactments, as applied to him, violate the Indiana Constitution's prohibition against ex post facto laws. We agree with McVey as to the lifetime-registration requirement but not as to the unlawful-entry statute. We therefore affirm in part and reverse in part.

# Facts and Procedural History

Effective July 1, 2001, a defendant eighteen years or older who is convicted of molesting a child less than twelve years old is required to register as a sex offender for life. *See* P.L. 238-2001, § 13; Ind. Code Ann. § 5-2-12-13(c) (LexisNexis 2001), *now codified at* Ind. Code Ann. § 11-8-8-19(c) (West Supp. 2015). Before July 1, 2001, a defendant convicted of child molesting was required to register for only ten years, regardless of the ages of the defendant

and the victim. *See Gonzalez v. State*, 980 N.E.2d 312, 315 (Ind. 2013); *see also* Ind. Code Ann. § 5-2-12-13 (LexisNexis 1997).[1]

[3] In addition, effective July 1, 2015, a person who is required to register as a sex offender and who is either found to be a sexually violent predator or convicted of, among other child crimes, child molesting commits unlawful entry by a serious sex offender, a Level 6 felony, when he "knowingly or intentionally enters school property." Ind. Code Ann. § 35-42-4-14(b) (West Supp. 2015).

[4] In June 2002, the State charged McVey with five counts for molesting his half-sister, J.H.: Count I: Class B felony child molesting; Count II: Class A felony child molesting; Counts III-IV: Class C felony child molesting; and Count V: Class B felony incest. The charges were based on events that occurred between October 1998 and August 2001, which is a time period that straddles the effective date of the amendment requiring lifetime registration. The jury found McVey guilty of all five counts. At McVey's December 2003 sentencing hearing, the trial court merged Count IV with Count III and Count V with Count I and entered judgment of conviction for Counts I, II, and III only. The court sentenced McVey to concurrent terms of ten years for Count I, with six years executed and four years suspended; thirty years for Count II, with twenty

---

[1] The State, relying on *Gonzalez*, says that the amendment took effect in 2006. Although the statute was recodified in 2006 from Title 5 to Title 11, the statute was actually amended in 2001 to provide that a defendant eighteen years or older who is convicted of molesting a child less than twelve years old is required to register as a sex offender for life. *See* P.L. 238-2001, § 13.

years executed and ten years suspended; and four years for Count III, with two years executed and two years suspended.

[5] McVey was released from the Indiana Department of Correction on July 15, 2011, at which time he started probation and registered as a sex offender for life. *See* Appellant's P-C App. p. 309 (listing registration start date as July 15, 2011). A year later, in July 2012, the trial court found that McVey violated his probation and sent him back to the DOC for "two years executed." *Id.* at 298-99. McVey was released to parole in 2014.

[6] In the meantime, McVey sought post-conviction relief. In July 2015, the post-conviction court vacated McVey's convictions for Counts I and II, leaving only a conviction for Count III.[2] Specifically, the post-conviction court found that McVey's trial counsel was deficient because counsel "was not appropriately knowledgeable about the admissibility of statements made during a polygraph examination and the post-test interview" and failed to advise McVey "that although polygraph examination results are not admissible, statements made during the test and post-test interview are admissible." *Id.* at 283-84. The court concluded that if McVey had not made such statements during the polygraph examination and the post-test interview, "there is a reasonable probability that

---

[2] The charging information for Count III alleges that "between the dates of October 1998 and August 2001," McVey performed or submitted to fondling or touching with J.H. with the intent to arouse or satisfy his or J.H.'s sexual desires. Appellant's Direct Appeal App. p. 37.

the outcome would have been different." *Id.* at 285.[3] The court did not vacate Count III, however, because it found that McVey admitted at trial that he "allowed J.H. to masturbate him," thus committing the offense in Count III. *Id.* at 284-85. Because McVey had already served the sentence for Count III, the court ordered him released from parole immediately. *Id.* at 292.[4]

[7] In September 2015, McVey filed two petitions pursuant to Indiana Code section 11-8-8-22(c), which provides that an offender may petition a court to be removed from the registry and to require him to register under less-restrictive conditions.[5] First, McVey filed a petition to be removed from the lifetime sex-offender registry. Second, he filed a petition asking to be exempt from the unlawful-entry statute because he was convicted of the qualifying offense (child molesting) before the statute went into effect.[6] Following a hearing, the trial court denied both petitions. *Id.* at 338.

---

[3] On direct appeal, McVey argued that the trial court abused its discretion by admitting these statements into evidence. We affirmed, concluding that McVey voluntarily made the statements. *McVey v. State*, 863 N.E.2d 434, 442-43 (Ind. Ct. App. 2007), *reh'g denied*, *trans. denied*. On post-conviction, McVey framed the issue as ineffective assistance of counsel.

[4] The record shows that McVey was incarcerated from July 8, 2002, to July 22, 2002, and from October 1, 2003, to July 15, 2011, for Counts I, II, and III. Appellant's P-C App. p. 294.

[5] Contrary to the State's argument on appeal, McVey filed these petitions in the correct court. Indiana Code section 11-8-8-22(d) provides that an offender shall file the petition "in the circuit or superior court of the county in which the offender resides." Because McVey lives in Shelby County, he correctly filed the petition in Shelby Circuit Court (which happened to be the same court where he was convicted, sentenced, and granted partial post-conviction relief).

[6] McVey alleged that he needed to enter school property because he was in the process of applying for a commercial driver's license (CDL) and, as part of that process, needed to take a course at Blue River Career Programs, which serves both high-school students and adults. *See* Blue River Career Programs,

[8]     McVey now appeals.

# Discussion and Decision

## I. Retroactive Application of Lifetime-Registration Requirement

McVey first contends that because the events underlying Count III took place before July 1, 2001—which is when the amendment requiring him to register as a sex offender for life as opposed to ten years went into effect—requiring him to register as a sex offender for life violates Indiana's prohibition against ex post facto laws. Article 1, Section 24 of the Indiana Constitution prohibits ex post facto laws, which impose punishment for an act that was not punishable at the time it was committed or which assign additional punishment to an act already punished. *Flanders v. State*, 955 N.E.2d 732, 748 (Ind. Ct. App. 2011), *trans. denied*, *reh'g denied*. "The policy underlying the Ex Post Facto Clause is to give effect to the fundamental principle that persons have a right to fair warning of that conduct which will give rise to criminal penalties." *Gonzalez*, 980 N.E.2d at 316 (quotation omitted).

[9]     The Indiana Supreme Court addressed whether the retroactive application of the 2001 amendment, which changed the registration requirement from ten years to life, violated Indiana's ex post facto provision in *Gonzalez*. In that case,

---

http://www.brcp.k12.in.us/ (last visited June 9, 2016); *see also* Ind. Code § 35-31.5-2-285 (defining "school property").

the defendant pled guilty to child solicitation in 1997, well before the 2001 amendment became effective. After the defendant had fully served his sentence and probation and during the ten-year period of his required registration, the statute was amended to require lifetime registration. Our Supreme Court concluded that Indiana's Ex Post Facto Clause prohibited retroactive application of the lifetime-registration requirement to the defendant. *Id.* at 315.

[10] Like the defendant in *Gonzalez*, McVey argues that because he committed the offense in Count III before the amendment went into effect on July 1, 2001, Indiana's Ex Post Facto Clause prohibits retroactive application of the lifetime-registration requirement to him.[7] McVey acknowledges that the charging information for Count III alleges that the offense occurred between October 1998 and August 2001, which includes a brief period when the amendment was effective; however, he points out that Count III is based entirely on his admission at trial that he let J.H. masturbate him, which occurred before July 1, 2001. He is correct.

[11] In its order vacating McVey's convictions in Counts I and II, the post-conviction court explained that it was not vacating his conviction in Count III because McVey admitted at trial that he "allowed J.H. to masturbate him," thus committing the offense in Count III. Appellant's P-C App. p. 284-85. Indeed,

---

[7] Although our Supreme Court found an ex post facto violation "as applied" to the defendant in *Gonzalez*, 980 N.E.2d at 321, the only ground upon which the State distinguishes *Gonzalez* is that the defendant in *Gonzalez* committed the offense *before* the 2001 amendment went into effect. But as explained below, we also find that McVey committed the offense before the 2001 amendment went into effect.

McVey testified at trial that he had engaged in only one sex act with J.H. That is, on one occasion, J.H. came into McVey's bedroom when he was asleep; when he woke up, J.H. "was stroking [his] penis." Direct Appeal Tr. p. 407. After about a minute, he ejaculated. *Id.* Although McVey did not testify as to when this single incident occurred, Indiana State Police Officer Mark James did. Officer James testified that he interviewed McVey on May 28, 2002, during which McVey said that the incident occurred "approximately twelve to fourteen months ago." *Id.* at 223. Accordingly, the single incident for which McVey now stands convicted occurred sometime between March and May 2001, which is before the amendment went into effect on July 1, 2001. Because Indiana's Ex Post Facto Clause prohibits retroactive application of the lifetime-registration requirement to McVey, he is required to register for only ten years.

[12] McVey claims, however, that this ten-year period has already expired and therefore he should be removed from the sex-offender registry, because "[b]ut for the sentences imposed for counts one and two, which were subsequently vacated, [he] would have been released from the [DOC] on September 30, 2004," not July 15, 2011. Indiana Code section 11-8-8-19(a) provides that when a sex offender is required to register for ten years, the sex offender must do so "until the expiration of ten (10) years after the date" the sex offender is released from a penal facility for the sex offense requiring registration. The registration period is tolled during any period that the sex offender is incarcerated. Ind. Code § 11-8-8-19(a).

[13] The record shows that McVey was released from the DOC for Counts I, II, and III on July 15, 2011. *See* Appellant's P-C App. p. 297. Nevertheless, McVey argues that "fundamental due process and basic fairness" dictate that the ten-year period should be treated as if it started on September 30, 2004. Appellant's Reply Br. p. 10. McVey, however, cites no authority in support of this argument. In addition, the plain language of the statute provides that the ten-year period starts when the sex offender is released from prison, not when the sex offender should have been released. Accordingly, we find that McVey's ten-year registration period started when he was actually released from prison on July 15, 2011. Because McVey was incarcerated from May 1, 2012, to May 1, 2014—a total of 730 days—for violating his probation, *see* Appellant's P-C App. p. 298-99, McVey's ten-year-registration period is extended for 730 days.[8]

## II. Retroactive Application of Unlawful-Entry Statute

[14] McVey next contends that applying the unlawful-entry statute to him violates Indiana's ex post facto provision because he committed the qualifying offense (child molesting) in 2001, well before the unlawful-entry statute went into effect on July 1, 2015.[9]

---

[8] McVey notes that he was incarcerated for 150 days in another case. *See* Appellant's Reply Br. p. 10. If McVey was incarcerated for any days in addition to the 730 days he was incarcerated for violating his probation, then his ten-year registration period is extended by these days as well.

[9] The State argues that it is too early for McVey to make an ex post facto claim because he has not been charged with unlawful entry by a serious sex offender. *See* Appellee's Br. p. 26-27. A person "should not be required to face the Hobson's choice between forgoing behavior that he believes to be lawful and violating the challenged law at the risk of prosecution." *Smith v. Wis. Dep't of Agric.*, 23 F.3d 1134, 1141 (7th Cir. 1994); *see*

[15] In evaluating an ex post facto claim under the Indiana Constitution, our courts apply the "intent-effects" test. *Wallace v. State,* 905 N.E.2d 371, 378 (Ind. 2009), *reh'g denied.* First, we examine "what type of scheme" the General Assembly intended the Sex Offender Registration Act ("the Act") to establish. *Gonzalez,* 980 N.E.2d at 316. If the legislature's purpose was to impose punishment, then the inquiry ends and an ex post facto violation is found. *Id.* If, however, the legislature's intent was regulatory or civil in nature, then the court must move to the second prong of the inquiry to determine whether the effects of the Act are so punitive as to transform the regulatory scheme into a criminal penalty. *Id.* Because there is no available legislative history and the Act does not contain a purpose statement, our Supreme Court has consistently assumed without deciding that the legislature's intent in passing the Act was to create a civil, regulatory, non-punitive scheme, and then moved to the second part of the test. *See id.*

[16] For the second part of the test, we consider whether the effects of the Act, as applied to that defendant, are so punitive in nature as to constitute a criminal penalty. *Id.* at 317. In evaluating the effects, we apply the following seven factors from *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963): (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as punishment; (3) whether it comes into play only

*also Greer v. Buss*, 918 N.E.2d 607, 614 (Ind. Ct. App. 2009) (acknowledging that a person "need not 'first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters his exercise of constitutional rights'" (quoting *Steffel v. Thompson*, 415 U.S. 452, 459 (1974))).

on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment—retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether it has a rational alternative purpose; and (7) whether it appears excessive in relation to the alternative purpose. *Jensen v. State,* 905 N.E.2d 384, 391 (Ind. 2009). These factors are neither exhaustive nor dispositive; they provide a framework for the analysis. *Tyson v. State*, No. 45S03-1509-CR-528, 2016 WL 756366 (Ind. Feb. 25, 2016).

[17] Our Supreme Court addressed the retroactive application of a similar statute, the residency-restriction statute, in *State v. Pollard*, 908 N.E.2d 1152 (Ind. 2009). Effective July 1, 2006, a person who is required to register as a sex offender and who is either found to be a sexually violent predator or convicted of certain crimes against children commits sex offender registry offense, a Level 6 felony, if he knowingly or intentionally resides within 1000 feet of school property, a youth-program center, or a public park. Ind. Code Ann. § 35-42-4-11 (West Supp. 2015). In *Pollard*, the defendant argued that the residency-restriction statute violated Indiana's ex post facto provision because he committed the qualifying offense before the statute went into effect.[10] In determining the effects of the statute, the Court analyzed the seven factors from *Mendoza-Martinez* and concluded that Factors 1, 2, 4, 5, and 7 were punitive as applied to

---

[10] The public law that created the residency-restriction statute contains a non-code provision that the statute applies "only to crimes committed after June 30, 2006." *See* P.L. 6-2006, § 10. Accordingly, our Supreme Court noted in *Bleeke v. Lemmon* that this statute applies only to offenders who commit their crimes after June 30, 2006. 6 N.E.3d 907, 922-23 (Ind. 2014).

the defendant: (1) the restraint imposed by the residency-restriction statute was not minor or indirect, as it affected the defendant's freedom to live in a house that he owned before the statute went into effect and had lived in for twenty years; (2) living restrictions are common conditions of probation and parole; (4) the residency-restriction statute is designed to reduce the likelihood of future crimes by depriving sex offenders of the opportunity to commit the crimes; (5) the defendant's guilt on the qualifying offense exposed him to further criminal liability under the residency-restriction statute; and (7) because the residency-restriction statute also applies to sexually violent predators (which can include defendants convicted of sex crimes not involving children) and the abbreviated record presented on appeal did not include the sex offense that the defendant was convicted of, restricting residence based on conduct that may have nothing to do with crimes against children was punitive. Accordingly, the Court concluded that, as applied to the defendant, the residency-restriction statute violated Indiana's ex post facto provision because it "impose[d] burdens that ha[d] the effect of adding punishment beyond that which could have been imposed when his crime was committed." *Id.* at 1154.

[18] Using *Pollard* as a guide, we find that Factors 1 and 7 are non-punitive as applied to McVey and thus readily distinguish this case from *Pollard*. As for Factor 1, which addresses whether the law subjects those within its purview to an affirmative disability or restraint, the record shows that McVey wants to enter school property, Blue River Career Programs, to take a CDL class. Notably, McVey does not allege that this is the only place where he can take the

class. And it appears that McVey started the CDL process after the unlawful-entry statute went into effect on July 1, 2015. An offender who is prohibited from entering school property to take a class after the unlawful-entry statute became effective is very different from an offender who is prohibited from living in a house that the offender owned and lived in for twenty years before the residency-restriction statute became effective. The effects to McVey are minor in comparison. *See Sewell v. State*, 973 N.E.2d 96, 103 (Ind. Ct. App. 2012) (applying the residency-restriction statute to the defendant did not violate Indiana's ex post facto provision because he "did not reside [in] or own property within 1,000 feet of the church when he was convicted of child molesting. Nor has he shown that he resided in property which only later fell within a protected zone . . . . We conclude that because [the defendant's] residency decision occurred after the enactment of the statute, [his] prosecution does not violate" Indiana's ex post facto provision). This factor is non-punitive as applied to McVey.

[19] Factor 7, which addresses whether the statute appears excessive in relation to the alternative purpose assigned, is given the greatest weight. *See Pollard*, 908 N.E.2d at 1153. Although the unlawful-entry statute, like the residency-restriction statute, also applies to sexually violent predators (which can include defendants convicted of sex crimes not involving children), McVey was convicted of child molesting, which is a crime against children. In contrast, in *Pollard*, it was unknown whether the defendant's sex-offense conviction was against a child. *Id.* at 1147 n.1 ("The stipulated facts say nothing about the

nature of the offense or the sentence imposed."). Accordingly, the *Pollard* Court found that because the residency-restriction statute applied to sexually violent predators, restricting residence based on conduct that may have nothing to do with crimes against children was punitive as applied to the defendant. But because McVey was convicted of child molesting, this factor is non-punitive as applied to McVey.

[20] Because of the distinctions between *Pollard* and this case—particularly Factor 7, which is given the greatest weight—we conclude that, as applied to McVey, the unlawful-entry statute does not violate Indiana's ex post facto provision.

[21] Affirmed in part and reversed in part.

Barnes, J. and Mathias, J., concur.