# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 22 2016, 9:25 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Gregory F. Zoeller
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Ryan P. Dillon
Dillon Legal Group, P.C.
Franklin, Indiana

ATTORNEY FOR AMICUS
CURIAE ACLU OF INDIANA

Jan P. Kubicki-Mensz
ACLU of Indiana
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

State of Indiana,

*Appellant-Plaintiff,*

v.

Kenneth R. Trisler,

*Appellee-Defendant.*

November 22, 2016

Court of Appeals Case No.
55A01-1604-CR-953

Appeal from the Morgan Superior
Court

The Honorable Christopher L.
Burnham, Judge

Trial Court Cause No.
55D02-1512-F6-1726

**Brown, Judge.**

The State of Indiana appeals the trial court's order granting Kenneth R. Trisler's motion to dismiss the charging information on the grounds that Ind. Code § 35-42-4-14 is an *ex post facto* law as applied to him. The State raises one issue which we revise and restate as whether the court abused its discretion in granting Trisler's motion to dismiss. We reverse and remand.

## Facts and Procedural History

On February 19, 2010, Trisler pleaded guilty to child molesting as a class C felony under Ind. Code § 35-42-4-3(b). On November 3, 2013, he was released from the Indiana Department of Correction (the "DOC"), and, due to his child molesting conviction, registered as a sex offender as required by Ind. Code § 11-8-8-7. In 2015, the Indiana Legislature enacted Ind. Code § 35-42-4-14,[1] (the "unlawful-entry statute") which provided in part:

> (a) As used in this section, "serious sex offender" means a person required to register as a sex offender under IC 11-8-8 who is:
>
>> (1) found to be a sexually violent predator under IC 35-38-1-7.5; or
>>
>> (2) convicted of one (1) or more of the following offenses:
>>
>>> (A) Child molesting (IC 35-42-4-3).

---

[1] Subsequently amended by Pub. L. No. 13-2016, § 17 (eff. July 1, 2016).

* * * * *

> (b) A serious sex offender who knowingly or intentionally enters school property commits unlawful entry by a serious sex offender, a Level 6 felony.

On December 8, 2015, Trisler was arrested for entering the property of the Mooresville Consolidated School Corporation. On December 9, 2015, the State charged him with Count I, unlawful entry onto school property by a serious sex offender as a level 6 felony, and Count II, criminal trespass as a level 6 felony. The charging information for Count I alleged that "on or about December 8, 2015 in Morgan County, State of Indiana, Kenneth R. Trisler, being a serious sex offender, did knowingly enter school property, to-wit: Mooresville Consolidated School Corporation." Appellant's Appendix at 10.

On February 26, 2016, Trisler filed a motion to dismiss Count I along with a memorandum of law in support of the motion to dismiss and a motion to suppress related to Count II. On April 8, 2016, the court held a hearing on Trisler's motions and, at the outset, Trisler's counsel stated that "the prosecutor and I would stipulate to the facts and volition [sic] of the probable cause affidavit . . . as well as that [Trisler] would have the conviction for child molesting arising out of 2010. I don't think there's any dispute of those two facts." Transcript at 3. Trisler's counsel argued that the unlawful-entry statute is an *ex post facto* law in violation of the state and federal constitutions, that the statute is not regulatory, and that the "sole purpose of this statute is only [to] punish people who have the designation of serious sex offender." *Id.* at 4. His

counsel acknowledged that Trisler would qualify under the statutory definition as a serious sex offender but argued that the statute was "adopted to punish behavior after a person is already in a certain class of persons" and that, as to Trisler, the unlawful-entry statute is punitive. *Id.* at 5. Trisler's counsel also stated that if a defendant has "kids in the school, he's not allowed to go to events, if the school nurse says, my kids are sick, I can't come on the property, if I do, then I'm going to be charged with a statute [sic], if I don't, I'm charged with neglect of a dependent," and that that set of facts "doesn't necessarily apply to [Trisler]" but to a hypothetical defendant. *Id.* at 5-6. The prosecutor argued that the unlawful-entry statute is "not ex post facto at all, because a new act occurred after the statute went into effect." *Id.* at 8. The court stated that "I'm going to grant . . . [Trisler's] Motion to Dismiss count one because it is [an] ex post facto law and unconstitutional as applied to [Trisler]." *Id.* at 10-11.

[5] The same day, the court issued a written ruling granting Trisler's motion to dismiss Count I, which stated in part:

> The law was effective on July 1, 2015. [Trisler] was defined by this law as a "serious sex offender" by reason of his conviction for a qualifying sex offense in February 2010. The punitive effect of this new law took effect more than five years after his conviction for a sex offense, and did not exist in the law at the time of his conviction.
>
> As applied to [Trisler], IC 35-42-4-14 violates the prohibitions regarding *ex post facto* laws in Article I, Section 24 of the Indiana Constitution and Article I, Section 10 of the United States constitution, and is unconstitutional as applied to [Trisler].

Appellant's Appendix at 35.[2]

## *Discussion*

[6] The issue is whether the trial court abused its discretion in granting Trisler's motion to dismiss Count I. We generally review a trial court's ruling on a motion to dismiss a charging information for an abuse of discretion. *Tiplick v. State*, 43 N.E.3d 1259, 1262 (Ind. 2015). But where, as here, the arguments presented are questions of law, we consider them de novo. *Study v. State*, 24 N.E.3d 947, 950 (Ind. 2015), *cert. denied*, 136 S. Ct. 412 (2015). We review questions of constitutionality *de novo*. *Zoeller v. Sweeney*, 19 N.E.3d 749, 751 (Ind. 2014). The party challenging the statute bears the burden of proof and all doubts are resolved against him. *Jensen v. State*, 905 N.E.2d 384, 390 (Ind. 2009). Unlike a facial challenge, however, a party raising an as applied challenge need only show the statute is unconstitutional "on the facts of [the] particular case." *Meredith v. Pence*, 984 N.E.2d 1213, 1218 n.6 (Ind. 2013).

[7] The State argues that the unlawful-entry statute is not being applied retroactively as to Trisler, that, applying the factors of the intent-effects test, application of the unlawful-entry statute to Trisler is not a violation of *ex post facto* principles and that the trial court's ruling conflicts with the law in Indiana regarding proper application of the Indiana *ex post facto* clause.

---

[2] The court's order also denied Trisler's suppression motion related to Count II.

[8] Trisler argues that the trial court did not abuse its discretion in dismissing Count I because the facts alleged demonstrate a retroactive application of the law to his conduct and that application of the unlawful-entry statute to him is punitive, even if the legislature intended the statute to be civil or regulatory in nature. He contends that applying the unlawful-entry statute to him "alter[s] the state of affairs [for Trisler], by transforming [what] was once legal conduct to criminal conduct, based on his earlier conviction" and that his past conduct, which led to a conviction for child molesting, is the conduct that is "subject to the retroactive application of the law and not [Trisler's] entrance upon school property (which otherwise would have been a legal act)." Appellee's Brief at 12. He asserts that the seven factors of the intent-effects test weigh in favor of the conclusion that the unlawful entry statute, as applied, is more punitive than regulatory and that a recent decision, *McVey v. State*, 56 N.E.3d 674 (Ind. Ct. App. 2016), in which another panel of this Court, concluded that application of the unlawful-entry statute to an individual convicted of child molesting in 2001 was not unconstitutional *ex post facto* punishment, should be reconsidered.

[9] The American Civil Liberties Union of Indiana ("ACLU") filed an amicus brief arguing that the unlawful-entry statute violates the Indiana Constitution's prohibition on *ex post facto* laws and that "[f]or many thousands of people with convictions for sex offenses, the law's punitive effects are severe as there are many legitimate reasons to be on school property" including voting when polling places are on school grounds, participating in adult education opportunities when on school grounds, and entering school grounds as a parent

to address a child's health and safety emergencies, attend to disciplinary issues, and participate in a child's educational and extracurricular activities. Amicus Brief at 8. The ACLU points out that the unlawful-entry statute does not contain exceptions or establish a process for individuals with legitimate and compelling reasons to be on school property and argues that this court's holding in *McVey* "should not be broadly applied as the law is excessive and punitive for the many individuals who have a legitimate reason to be on school grounds, particularly for parents who have children enrolled in the school." *Id.* at 9.

In reply, the State asserts that *McVey* supports the conclusion that applying the unlawful-entry statute to Trisler is not an *ex post facto* violation and that the court abused its discretion in granting Trisler's motion to dismiss.

The United States Constitution provides that "[n]o State shall . . . pass any ex post facto Law." U.S. CONST. art. 1, § 10. The Indiana Constitution provides that "[n]o ex post facto law . . . shall ever be passed." IND. CONST. art. 1, § 24. In evaluating an ex post facto claim under the Indiana Constitution we apply what is commonly known as the "intent-effects" test. *Wallace v. State*, 905 N.E.2d 371, 378 (Ind. 2009), *reh'g denied*. Under the first prong of this test, we determine what type of scheme the legislature intended the statute to establish. *Id.* (citing *Smith v. Doe,* 538 U.S. 84, 92, 123 S. Ct. 1140, 1146-1147 (2003)). If the legislature's intention was to impose punishment, the inquiry ends and an ex post facto violation is found. If, however, the legislature's intention was regulatory or civil in nature, then the court must move to the second prong of

the inquiry to determine whether the effects of the statute are so punitive as to transform the regulatory scheme into a criminal penalty. *See id.*

[12] First, "it is difficult to determine legislative intent since there is no available legislative history and the [Indiana Sex Offender Registration] Act does not contain a purpose statement." *Id.* at 383 (quoting *Spencer v. O'Connor*, 707 N.E.2d 1039, 1043 (Ind. Ct. App. 1999)). As with the overall Act, the unlawful-entry statute does not contain a purpose statement, and some components of the overall Act are contained in the civil code while others, like the unlawful-entry statute, are contained in the criminal code. *Id.* We are aided by the principle that every statute stands before us clothed with the presumption of constitutionality until that presumption is clearly overcome by a contrary showing. *State v. Rendleman*, 603 N.E.2d 1333, 1334 (Ind. 1992). We assume without deciding that, in passing the overall Act, "the legislature's intent was to create a civil, non-punitive, regulatory scheme . . . ." *State v. Pollard*, 908 N.E.2d 1145, 1150 (Ind. 2009); *see also Wallace,* 905 N.E.2d at 379.

[13] Second, we consider whether the effects of the overall Act, as applied to the defendant, are so punitive in nature as to constitute a criminal penalty. *Wallace,* 905 N.E.2d at 378. In evaluating a statute's effects, we are guided by the seven factors listed in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 83 S. Ct. 554 (1963):

> [1] Whether the sanction involves an affirmative disability or restraint, [2] whether it has historically been regarded as a punishment, [3] whether it comes into play only on a finding of scienter, [4] whether its operation will promote the traditional aims of punishment—retribution and deterrence, [5] whether the

behavior to which it applies is already a crime, [6] whether an alternative purpose to which it may rationally be connected is assignable for it, and [7] whether it appears excessive in relation to the alternative purpose assigned.

*Wallace*, 905 N.E.2d at 379 (alterations in original) (quoting *Mendoza-Martinez*, 372 U.S. at 168-169, 83 S. Ct. at 567-568).

[14] Another panel of this Court has recently addressed whether retroactive application of the unlawful-entry statute violates Indiana's *ex post facto* clause. We find instructive *McVey v. State*, 56 N.E.3d 674 (Ind. Ct. App. 2016). In that case, McVey was convicted in 2001 of child molesting as a class C felony for molesting his half-sister. *McVey*, 56 N.E.3d at 676. He was released from the DOC on July 15, 2011, started probation, and registered as a sex offender. *Id.* at 677. In July 2012, the trial court determined that McVey had violated his probation, he was sent back to the DOC for two years executed, and he was released to parole in 2014. *Id.* In September 2015, McVey filed a petition, pursuant to Ind. Code § 11-8-8-22(c) asking to be exempt from the unlawful-entry statute because he was convicted of the qualifying offense (child molesting) before the statute went into effect, which the trial court denied. *Id.* at 677-678.

[15] On appeal, McVey argued, in part, that applying the unlawful-entry statute to him violates Indiana's ex post facto provision because he committed the qualifying offense (child molesting) in 2001, well before the unlawful-entry

statute went into effect on July 1, 2015. *Id.* at 679. This Court provided the following analysis:

> Using *Pollard* as a guide, we find that Factors 1 and 7 are non-punitive as applied to McVey and thus readily distinguish this case from *Pollard*. As for Factor 1, which addresses whether the law subjects those within its purview to an affirmative disability or restraint, the record shows that McVey wants to enter school property, Blue River Career Programs, to take a CDL class. Notably, McVey does not allege that this is the only place where he can take the class. And it appears that McVey started the CDL process after the unlawful-entry statute went into effect on July 1, 2015. An offender who is prohibited from entering school property to take a class after the unlawful-entry statute became effective is very different from an offender who is prohibited from living in a house that the offender owned and lived in for twenty years before the residency-restriction statute became effective. The effects to McVey are minor in comparison. *See Sewell v. State*, 973 N.E.2d 96, 103 (Ind. Ct. App. 2012) (applying the residency-restriction statute to the defendant did not violate Indiana's ex post facto provision because he "did not reside [in] or own property within 1,000 feet of the church when he was convicted of child molesting. Nor has he shown that he resided in property which only later fell within a protected zone. . . . We conclude that because [the defendant's] residency decision occurred after the enactment of the statute, [his] prosecution does not violate" Indiana's ex post facto provision). This factor is non-punitive as applied to McVey.

> Factor 7, which addresses whether the statute appears excessive in relation to the alternative purpose assigned, is given the greatest weight. *See Pollard,* 908 N.E.2d at 1153. Although the unlawful-entry statute, like the residency-restriction statute, also applies to sexually violent predators (which can include defendants convicted of sex crimes not involving children),

McVey was convicted of child molesting, which is a crime against children. In contrast, in *Pollard*, it was unknown whether the defendant's sex-offense conviction was against a child. *Id.* at 1147 n.1 ("The stipulated facts say nothing about the nature of the offense or the sentence imposed."). Accordingly, the *Pollard* Court found that because the residency-restriction statute applied to sexually violent predators, restricting residence based on conduct that may have nothing to do with crimes against children was punitive as applied to the defendant. But because McVey was convicted of child molesting, this factor is non-punitive as applied to McVey.

Because of the distinctions between *Pollard* and this case—particularly Factor 7, which is given the greatest weight—we conclude that, as applied to McVey, the unlawful-entry statute does not violate Indiana's ex post facto provision.

*Id.* at 681.

[16] By virtue of his 2010 conviction for child molesting, the unlawful-entry statute applies to Trisler's entry on to school property. As to Factor 1, which addresses whether the sanction imposes an affirmative disability or restraint, the record does not indicate the reason for Trisler's presence on school property. Indeed, at the hearing, his counsel acknowledged that Trisler did not have a child who attended the school and that a set of facts involving a parent attending to a child's needs "doesn't necessarily apply to [Trisler]," nor is there evidence that he entered school property in order to vote, participate in adult education, attend to a child's health, safety, or other school-related needs, or that he entered school property with the permission of school administrators. Transcript at 3. Additionally, Trisler does not dispute that he entered school

property after the unlawful-entry statute went into effect on July 1, 2015. As to Factor 6, which addresses whether an alternative purpose to which the unlawful-entry statute may rationally be assigned, we observe that the unlawful-entry statute advances the state's regulatory goal of protecting children from registered sex offenders. We further note that Trisler acknowledges the unlawful-entry statute's regulatory purpose, and he states "[a]dmittedly, the unlawful act [sic] does purport the advancement of a non-punitive purpose, specifically public safety. The factor weighs toward a non-punitive finding of the effects of the statute." Appellee's Brief at 23. As to Factor 7, which addresses whether the unlawful-entry statute appears excessive in relation to the alternative purpose assigned, we note that, although the unlawful-entry statute applies to individuals convicted of crimes unrelated to children, Trisler was convicted of child molesting, a crime against children. The unlawful-entry statute serves to further the state's regulatory goal of protecting children from registered sex offenders by reducing a sex offender's opportunities for contact with children through regulation of a sex offender's entry onto school property. We cannot say that the unlawful-entry statute is unrelated to the state's non-punitive goal of protecting children from sex offenders or that it is excessive in relation to that goal. Based upon *McVey*, we conclude that, as applied to Trisler, the unlawful-entry statute does not violate Indiana's *ex post facto* clause[3]

---

[3] With respect to Trisler's argument that the unlawful-entry statute violates the federal *ex post facto* clause, we observe that we apply the intent-effects test to evaluate an *ex post facto* claim under both the Indiana and the federal constitution. *See Wallace*, 905 N.E.2d at 378 (observing that the United States Supreme Court applied the intent-effects test in discussing whether a statute violated the *ex post facto* clause of the United States

and that the trial court abused its discretion in granting Trisler's motion to dismiss.

## *Conclusion*

[17] For the foregoing reasons, we reverse the trial court's dismissal of the charging information and remand for further proceedings.

[18] Reversed and remanded.

Robb, J., and Mathias, J., concur.

---

Constitution and holding that the intent-effects is the "appropriate analytical framework for analyzing ex post facto claims under the Indiana Constitution"); *Gonzalez v. State*, 980 N.E.2d 312, 316, n.3 (Ind. 2013) (observing that "Indiana courts have adopted an approach consistent with the federal standard through use of the intent-effects test"). We cannot say, for the reasons discussed above, that Trisler has demonstrated a violation of the federal *ex post facto* clause.

To the extent Trisler and the ACLU develop an argument that requires us to assess the impact of the unlawful-entry statute on the basis of facts and parties not before us, the Indiana Supreme Court has stated that, in the context of an Indiana constitutional challenge, "a court should focus on the actual operation of the statute at issue and refrain from speculating about hypothetical applications," and that "[u]nless the court concludes that the statute before it is incapable of constitutional application, it should limit itself to vindicating the rights of the party before it." *Price v. State*, 622 N.E.2d 954, 958 (Ind. 1993), *reh'g denied*; *see also Murphy v. State*, 837 N.E.2d 591, 593 (Ind. Ct. App. 2005) (noting that "a person to whom a statute may be applied constitutionally may not challenge the statute on the basis that it may conceivably be applied in an unconstitutional manner to others not before the court"), *trans. denied*.