

FILED

Mar 04 2019, 10:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Curtis T. Hill, Jr.
Attorney General of Indiana

Stephen R. Creason
Chief Counsel
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Alan D. Wilson
Kokomo, Indiana

I N  T H E
# COURT OF APPEALS OF INDIANA

State of Indiana,

*Appellant-Defendant,*

v.

Douglas Kirby,

*Appellee-Plaintiff.*

March 4, 2019

Court of Appeals Case No.
18A-PL-2334

Appeal from the Howard Superior
Court

The Honorable George A.
Hopkins, Judge

Trial Court Cause No.
34D04-1805-PL-334

**Tavitas, Judge.**

## Case Summary

The State appeals the trial court's entry of declaratory judgment, declaring that the unlawful-entry statute, Indiana Code Section 35-42-4-14(b) ("the Statute"), is an unconstitutional ex post facto law as applied to Douglas Kirby. We reverse and remand.

## Issue

The State presents one issue, which we restate as whether the Statute is an unconstitutional ex post facto law as applied to Kirby.

## Facts

The underlying facts, as described by our Supreme Court, are as follows:

> Douglas Kirby pleaded guilty to child solicitation in 2010, leading to a ten-year sex-offender registration requirement and an eighteen-month sentence, suspended to probation. His probation conditions made schools off-limits, but he asked for and received an exception for his son's activities. He kept attending his son's school events after finishing probation in 2012.
>
> In 2015, though, Indiana Code section 35-42-4-14 made it a Level 6 felony for a "serious sex offender" to knowingly or intentionally enter school property. Under that new statute, a serious sex offender is someone who must register as a sex offender and has been convicted of a qualifying offense. Ind. Code § 35-42-4-14(a) (Supp. 2015). Child solicitation is one of those qualifying offenses, I.C. § 35-42-4-14(a)(2)(F), so Kirby had to stop attending school events.
>
> Kirby challenged this restriction by seeking post-conviction relief. He argued that he did not "knowingly" plead guilty because he

didn't know at the time of his plea that he would later be barred from school property. He also alleged that the new statute was an unconstitutional ex post facto law because it added punishment to an already-committed crime. The post-conviction court denied relief.

On appeal, Kirby challenged the school-entry restriction on three constitutional grounds—including the ex post facto claim. The Court of Appeals agreed with Kirby on that claim, holding that the statute's school-entry restriction is unconstitutional as applied to him. *Kirby v. State*, 83 N.E.3d 1237, 1246 (Ind. Ct. App. 2017).

The State sought rehearing, arguing that post-conviction proceedings are the wrong vehicle for Kirby's ex post facto claim. The Court of Appeals denied rehearing, and the State sought transfer—which we granted, vacating the Court of Appeals opinion. Ind. Appellate Rule 58(A).

*Kirby v. State*, 95 N.E.3d 518, 519-20 (Ind. 2018). Our Supreme Court found that, while Kirby could not raise his ex post facto claim in a post-conviction proceeding, "he may have a vehicle for his claim" through a declaratory judgment action. *Id.* at 521. Our Supreme Court's opinion vacated this court's opinion on Kirby's post-conviction proceeding.[1]

[4]     On May 15, 2018, Kirby filed his declaratory judgment action. Kirby sought a judgment declaring that the Statute is an unconstitutional ex post facto law as applied to Kirby and "an Order specifically allowing [Kirby] to go on to school

---

[1] Accordingly, we are not precluded from reviewing this issue again as Kirby asserts.

property for all lawful purposes[.] . . ." Appellant's App. Vol. II p. 7. After a hearing, the trial court declared the Statute was unconstitutional as applied to Kirby and found the following:

> 10. The sentencing court allowed the petitioner to go onto school property to attend his son's school functions and sporting events before the 2015 amendment.
>
> 11. The court finds that IC 35-[42]-4-14(b) is an ex-post [facto] law as it applies to the petitioner and is unconstitutional.
>
> 12. The petitioner may enter onto school property to attend his [son's] school functions and sporting events.

*Id*. at 118.

## Analysis

The ex post facto clause of the Indiana Constitution forbids laws that impose punishment for an act that was not otherwise punishable when it was committed. Ind. Const. art. 1 § 24; *Lemmon v. Harris*, 949 N.E.2d 803, 809 (Ind. 2011). The aim of the ex post facto clause is to ensure that people are "give[n] fair warning of the conduct that will give rise to criminal penalties." *Harris*, 949 N.E.2d at 809. The ex post facto clause also forbids laws (1) that impose punishment for an act that was not otherwise punishable when it was committed or (2) that impose additional punishment for an act then-proscribed. *Id.*

Our Supreme Court has held that "[a] law is ex post facto if it 'substantially disadvantage[s] [a] defendant because it increase[s] his punishment, change[s] the elements of or ultimate facts necessary to prove the offense, or deprive[s] [a] defendant of some defense or lesser punishment that was available at the time of the crime.'" *Id.* (quoting *Stroud v. State,* 809 N.E.2d 274, 288 (Ind. 2004)).

> In evaluating ex post facto claims under the Indiana Constitution, we apply the familiar "intent-effects" test . . . . Under this test, we first determine whether the Legislature meant the Act to establish civil proceedings. If instead its intention was to impose punishment, then the inquiry ends. However, if the Legislature intended a nonpunitive regulatory scheme, then we must examine the Act's effects to determine whether they are in fact so punitive as to transform the regulatory scheme into a criminal penalty; if so, then retroactive application of the law violates the Ex Post Facto Clause.

*Harris,* 949 N.E.2d at 810 (citations omitted).

### I.    *Whether the General Assembly Intended to Impose Punishment*

When analyzing the first step of the test, we consider "what type of scheme" the General Assembly intended. *McVey v. State,* 56 N.E.3d 674, 679 (Ind. Ct. App. 2016). Specifically,

> If the legislature's purpose was to impose punishment, then the inquiry ends and an ex post facto violation is found. If, however, the legislature's intent was regulatory or civil in nature, then the court must move to the second prong of the inquiry to determine whether the effects of the Act are so punitive as to transform the regulatory scheme into a criminal penalty. Because there is no available legislative history and the Act does not contain a

purpose statement, our Supreme Court has consistently assumed without deciding that the legislature's intent in passing the Act was to create a civil, regulatory, non-punitive scheme and then moved to the second part of the test.

*Id.* at 680 (citations omitted). We agree with the *McVey* court's analysis regarding the purpose of the Statute. We can, therefore, assume that the purpose of the Statute is a civil, regulatory, non-punitive scheme. Accordingly, we move to the second part of the test.

## II.    *Whether the Effect of the Statute is Punitive*

[8] For the second part of the test, we consider the test as put forth in *Kennedy v. Mendoza-Martinez,* 372 U.S. 144, 168-69, 83 S. Ct. 554 (1963). The *Mendoza-Martinez* factors are:

> (1) Whether the sanction involves an affirmative disability or restraint, (2) whether it has historically been regarded as a punishment, (3) whether it comes into play only on a finding of *scienter,* (4) whether its operation will promote the traditional aims of punishment-retribution and deterrence, (5) whether the behavior to which it applies is already a crime, (6) whether an alternative purpose to which it may rationally be connected is assignable for it, and (7) whether it appears excessive in relation to the alternative purpose assigned.

*State v. Pollard*, 908 N.E.2d 1145, 1150 (Ind. 2009) (internal citations omitted). "No one factor is determinative. [O]ur task is not simply to count the factors on each side, but to weigh them." *Id.* In doing so, the seventh factor is weighed most heavily. *See McVey,* 56 N.E.3d at 681.

Here, we are again persuaded by *McVey.* In *McVey,* the defendant argued that application of the Statute to him violated Indiana's ex post facto provision "because he committed the qualifying offense (child molesting) in 2001, well before the unlawful-entry Statute went into effect on July 1, 2015." *McVey,* 56 N.E.3d at 679. McVey wanted to enter school grounds to take a CDL class. *See id.* at 681. After weighing the seven *Mendoza-Martinez* factors, discussed above, a panel of our court concluded the Statute was not punitive as applied to McVey. The same result is required here.

## A. Affirmative Disability or Restraint

In comparing *McVey* to the present case, the first factor, which discusses "Affirmative Disability or Restraint," does put slightly more of a restraint on Kirby than it did on McVey. McVey sought to enter a school because he wanted to take a CDL class. Our court, however, found that "McVey does not allege that this is the only place where he can take the class. And it appears that McVey started the CDL process after the [Statute] went into effect on July 1, 2015." *Id.* The record is clear that Kirby wants to see his son participate in school activities, which his son has been doing for years with Kirby observing.

Still, taking the same approach as *McVey,* we find that the restraint here is starkly different from the restraint in *Pollard.* In *Pollard,* our Supreme Court found that the residential statute, which prohibited a registered sex offender from "knowingly or intentionally resid[ing] within 1,000 feet of school property, a youth-program center, or a public park," would prohibit Pollard from living in a house that he had owned and resided in for approximately

twenty years. *Pollard,* 908 N.E.2d at 1147. Our Supreme Court noted, "A sex offender is subject to constant eviction because there is no way for him or her to find a permanent home in that there are no guarantees a school or youth program center will not open within 1,000 feet of any given location." *Id.* at 1150.

[12] The restraint here, which is seemingly for only a limited time[2], does not limit where Kirby can live. Similarly, Kirby is not incurring any additional cost or relocating, as Pollard was required to do—without guarantee that he would not have to do so again. As the State articulates in its brief, a school is unique in that the school can, in many cases, limit its visitors through the use of visitor passes, locked doors, and other methods. This factor weighs against finding the Statute as punitive as applied to Kirby.

### B. *Sanctions That Have Historically Been Considered Punishment*

[13] The second factor, which discusses "Sanctions That Have Historically Been Considered Punishment," necessarily requires us to determine the classification of the Statute. The prohibition from entering school grounds as a result of the Statute was a mere "collateral consequence" of Kirby's conviction, not a punishment. Our Supreme Court's opinion in *Kirby v. State,* 95 N.E.3d 518 (Ind. 2018), which distinguishes Kirby's prohibition that he not enter school

---

[2] The State's brief states that Kirby "must register as a sex offender until 2022." Appellant's Br. p. 7.

grounds from his sentence, provides support for this proposition. In *Kirby,* our Supreme Court held:

> We agree with the State. A criminal sentence is the punishment ordered by the trial court after conviction—nothing more.
>
> * * * * *
>
> By contrast, when the legislature imposes restrictions on people convicted of certain crimes, those restrictions are not part of a sentence, but are collateral consequences. *See D.A. v. State*, 58 N.E.3d 169, 173 (Ind. 2016). Sex-offender registration itself is thus a collateral consequence. *Chaidez v. United States*, 568 U.S. 342, 349 n.5, 133 S.Ct. 1103, 185 (L.Ed.2d 149 (2013); *see generally* Ind. Code ch. 11-8-8 (2017) (imposing sex-offender registration requirements). The legislature can, for example, impose a lifetime registration requirement even after a sentence has been fully served. *See Gonzalez v. State*, 980 N.E.2d 312, 315 (Ind. 2013); *Jensen v. State*, 905 N.E.2d 384, 394-95 (Ind. 2009). Whether or not such a belated change is an ex post facto violation, it is not part of a sentence. *See Gonzalez*, 980 N.E.2d at 315.
>
> And Kirby's school-entry restriction is even more collateral than his registration requirement; after all, the restriction has sex-offender registration as a prerequisite. I.C. § 35-42-4-14(a). That removes the restriction another step from the conviction that led to the registration requirement. So while Kirby's child-solicitation conviction started the domino effect that led to his school-entry restriction, that restriction is not part of his conviction or sentence.

*Id.* at 520-21.

Just as our Supreme Court identified the differences between Kirby's collateral consequences and his sentence, there is a distinction between collateral consequences and punishment. *See State v. Reinhart,* 112 N.E.3d 705, 713 (Ind. 2018) (holding that "the required forfeiture of a defendant's driver's license is a collateral consequence of a guilty plea and conviction, not a punishment imposed by the court") (citations omitted); *see also Healey v. Carter,* 109 N.E.3d 1043, 1050-51 (Ind. Ct. App. 2018) (holding that Healey's sex offender registration did not constitute a penalty or punishment for purposes of the Sixth Amendment because it was a "collateral consequence"). This factor weighs against finding the Statute to be punitive as applied to Kirby.

### C. Finding of Scienter

For the third factor, regarding a finding of scienter, we consider that "'[t]he existence of a scienter requirement is customarily an important element in distinguishing criminal from civil statutes.'" *Wallace*, 905 N.E.2d at 381 (quoting *Kansas v. Hendricks*, 521 U.S. 346, 362 (1997)). If a sanction is not linked to a showing of mens rea, it is less likely to be intended as punishment. *Pollard*, 908 N.E.2d at 1151.

The Statute includes a showing of mens rea; in other words, it requires that the serious sex offender "knowingly or intentionally" entered school property. Ind. Code § 35-42-4-14(b). Also, child solicitation, the underlying qualifying offense that invoked the Statute in this case, requires a finding of scienter. Ind. Code § 35-42-4-6. As such, this factor favors treating the Statute as punitive as applied to Kirby.

## D. Traditional Aims of Punishment

[17] In *Hollen v. State,* 994 N.E.2d 1166, 1173 (Ind. Ct. App. 2013), a panel of our court addressed the fourth factor, regarding "Traditional Aims of Punishment," as follows:

> The fourth factor considers whether the statute's operation will promote the traditional aims of punishment—retribution and deterrence. The more [the Sex Offender Registration Act ("the Act")] promotes these traditional aims of punishment, the more likely it is to be punitive. Although lifetime registration required by the Act has a likely deterrent effect and promotes community condemnation of offenders, it also serves a valid regulatory function by providing the public with information related to community safety. Under the circumstances, this factor weighs in favor of treating the effects of the Act as non-punitive.

*Hollen,* 994 N.E.2d at 1173. The analysis is similar in this case as well. While the Statute is certainly a deterrent, in prohibiting Kirby from being near children the same age as his victim, the Statute also has a purely regulatory effect. Disallowing registered sex offenders from school grounds assists school officials by protecting children. The Statute eliminates one threat to student safety and serves a valid regulatory function on school grounds. This factor weighs against finding the Statute as punitive as applied to Kirby.

## E. Application Only to Criminal Behavior

[18] "Under the fifth factor[,] we consider 'whether the behavior to which [the Statute] applies is already a crime.'" *Pollard,* 908 N.E.2d at 1152 (quoting *Mendoza-Martinez,* 372 U.S. at 168). "The fact that a statute applies only to

behavior that is already and exclusively criminal supports a conclusion that its effects are punitive." *Id.* In *Pollard*, our Supreme Court noted that "[t]here is no question that it is the determination of guilt for a qualifying offense that exposed Pollard to further criminal liability under the residency restriction statute. We conclude this factor favors treating the effects of the residency statute as punitive when applied to Pollard." *Id.* The same analysis applies here. Because there is no question that it was the determination of guilt for a qualifying offense that exposed Kirby to further criminal liability under the Statute, this factor favors treating the Statute as punitive as applied to Kirby.

### F. Advancing a Non-Punitive Interest

The sixth factor addresses the "Advancing a Non-Punitive Interest" analysis. We find the analysis in this factor to be the same as the analysis on the second factor regarding whether the sanctions have historically been regarded as punishment. Because the Statute is merely a collateral consequence, and because the purpose of the Statute is to advance the safety of children, this factor weighs against finding the Statute to be punitive as applied to Kirby.

### G. Excessiveness in Relation to State's Articulated Purpose

Finally, we agree with the State's analysis of the seventh factor, which relates to the "Excessiveness in Relation to the State's Articulated Purpose." This factor is weighed most heavily. *See McVey,* 56 N.E.3d at 681. The purpose of this Statute is to prevent those who commit qualifying sex offenses and, therefore, are required to register as sex offenders, from entering school grounds where

children are present. The purpose of the Statute is to safeguard children from potential sexual predators, which outweighs Kirby's interests in attending school functions.

[21] Kirby was charged with "knowingly or intentionally solicit[ing] a child presumed to be the age of 15, a child at least fourteen years of age but less than sixteen years of age, to engage in sexual intercourse. . . ." Appellant's App. Vol. II p. 89. Kirby pleaded guilty to Child Solicitation, a Class D felony, as a lesser included offense.[3] In *McVey,* the panel distinguished cases in which a defendant is convicted of crimes involving children from cases in which a defendant is not convicted of crimes involving children. However, because Kirby, like McVey, was convicted of a crime involving a child, this factor is non-punitive as applied to Kirby. *See McVey,* 56 N.E.3d at 681.

[22] It is not excessive to prohibit Kirby from attending his son's school events because of his prior criminal conviction. Presumably, being a registered sex offender is inconvenient, but it is not excessive to limit convicted sex offenders from regularly interacting with children. Kirby's required sex offender registration—for a limited time—advances the Statute's requirement to protect children from those who present a threat to them. *See Harris,* 949 N.E.2d at 813 (holding that defendant's requirement, pursuant to an amended statute, that he register as a sexually violent predator was not excessive in relation to the

---

[3] The CCS indicates that the Class D felony was later converted to a Class A misdemeanor. *See* Appellant's App. Vol. II p. 82.

alternative purpose assigned because the law advanced the "legitimate regulatory purpose of public safety"). This factor weighs against finding the Statute to be punitive as applied to Kirby.

[23] For completeness, we emphasize that the exception to Kirby's probation conditions entered by the trial court, which allowed Kirby to attend certain school activities in which his son and grandchildren participated, should not be a basis for finding that the Statute is unconstitutional as applied to Kirby. The exception applied to a condition of Kirby's probation that he was prohibited from visiting all schools, playgrounds, and other locations unless his child or grandchildren were participating. Kirby's probation and that probation exception ended in 2012, several years before the legislature enacted Indiana Code Section 35-42-4-14. Still, in his petition for declaratory judgment, Kirby uses the probation exception to emphasize why, in his view, the Statute was unconstitutional as it applied to him. Kirby's petition for declaratory judgment states, "from the time of his sentencing in 2010 through the time that his sentence was reduced in early 2015, Kirby was allowed to go on to school property to participate in his son's educational and extra[]curricular activities." Appellant's App. Vol. II p. 6.

[24] The trial court agreed with Kirby that, because "[t]he sentencing court allowed the petitioner to go onto school property to attend his son's school functions and sporting events before the 2015 amendment," the Statute was unconstitutional as applied to Kirby. *Id.* at 118. Because Kirby's probation and probation exception ended in 2012, the probation exception was no longer in

effect and, accordingly, is not determinative here.[4] Moreover, the trial court's order, declaring the Statute as unconstitutional as applied to Kirby, also seemingly *still* limits Kirby's behaviors, stating only that the "petitioner may enter onto school property to attend his [son's] school functions and sporting events." *Id.* It seems odd that the trial court found the law unconstitutional as applied to Kirby, but still limited Kirby's conduct to what was permitted by the trial court during probation. Nonetheless, we believe that the trial court's implication that the probation exception was the driving force behind a finding of the Statute's unconstitutionality as applied to Kirby was incorrect.

[25] After weighing all of the factors in *Mendoza-Martinez*, and especially the seventh factor, regarding excessiveness in relation to the articulated purpose, the Statute is not unconstitutional as applied to Kirby. Accordingly, we reverse and remand.

## Conclusion

[26] Based on the foregoing, we conclude that the Statute is not unconstitutional as applied to Kirby. Accordingly, we reverse and remand.

[27] Reversed and remanded.

May, J. concurs.

---

[4] In Kirby's petition for declaratory judgment, he concedes as much, stating: "Kirby successfully completed all of the terms of his probation." Appellant's App. Vol. II p. 6.

Baker, J., dissents with opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| State of Indiana, <br> *Appellant-Defendant,* <br><br> v. <br><br> Douglas Kirby, <br> *Appellee-Plaintiff* | Court of Appeals Case No. <br> 18A-PL-2334 |

**Baker, Judge, dissenting.**

I respectfully dissent. After weighing the seven factors listed in *Mendoza-Martinez*, I would hold that the Statute is unconstitutional as applied to Kirby.

First, regarding whether the sanction involves an affirmative disability or restraint, here, the disability or restraint imposed by the Statute is neither minor nor indirect. The record reveals that in sentencing Kirby in 2010, the trial court explicitly gave Kirby permission to enter school property to attend and observe "activities involving his son." Appellant's App. Vol. II p. 96. Kirby was permitted to do so for five years before the Statute went into effect. Importantly, the record is devoid of any suggestion that Kirby behaved inappropriately at any time while on school property. Given these facts, I am

persuaded that this factor clearly favors treating the effects of the Statute as punitive as applied to Kirby.

[30] The majority believes that this factor restrains Kirby only slightly more than it did McVey. As the majority notes, sometime after the Statute went into effect, McVey wanted to enter a school to take a CDL class that he could have taken elsewhere. But here, since before the Statute went into effect, Kirby has been entering his son's school to see his son participate in school activities. Kirby wishes to continue to do so, and he cannot do so elsewhere. As this Court stated in *McVey*, "[a]n offender who is prohibited from entering school property to take a class after the unlawful-entry statute became effective is very different from an offender who is prohibited from living in a house that the offender owned and lived in for twenty years before the residency-restriction statute became effective. The effects to McVey are minor in comparison." 56 N.E.3d at 681. Because Kirby was able to enter his son's school for five years before the Statute went into effect, his situation is more akin to the homeowner affected by a residency-restriction statute than to McVey's. I see the logic in the majority's reasoning that a school can limit its visitors, yet a school presumably does not limit parental attendance at a child's activities for which parents are welcomed or encouraged to attend. In other words, the effect of this Statute to Kirby is not minor.

[31] Turning to the historical punishment factor, schools—especially school sporting events—generally have been open to members of the public. It seems reasonable to assume, therefore, that the act of restricting an individual from

entering school property has historically been considered a form of punishment, whether for an act committed on school grounds or in the community. This is especially true considering that until the Statute went into effect, Kirby had been permitted to enter school property to observe his son's activities, even after he pleaded guilty to and was convicted of child solicitation. As such, I am persuaded that this factor also favors treating the effects of the Statute as punitive as applied to Kirby.

[32] As for the third factor addressing scienter, I concur with the majority that it favors treating the effects of the Statute as punitive as applied to Kirby.

[33] The fourth factor considers the traditional aims of punishment. In *Pollard*, the Indiana Supreme Court found that the residency restriction statute, which limits where sex offenders can reside, was an "even more direct deterrent to sex offenders than the [Indiana Sex Offender Registration Act]'s registration and notification regime." 908 N.E.2d at 1152. One may reasonably assume that like the residency restriction statute, the Statute is designed to reduce the likelihood of future crimes by depriving the offender of the opportunity to commit those crimes. In this sense, the Statute is a direct deterrent to sex offenders. I find our Supreme Court's conclusion regarding this factor in *Pollard* to be instructive and am similarly persuaded that this factor favors treating the effects of the Statute as punitive as applied to Kirby.

[34] I concur with the majority regarding the fifth and sixth factors. The fifth factor considers whether the behavior to which the Statute applies is already a crime; I

concur that this factor favors treating the effects of the Statute as punitive as applied to Kirby. The sixth factor considers whether the Statute advances a legitimate, regulatory purpose; I concur that this factor favors treating the effects of the Statute as non-punitive as applied to Kirby.

[35] Finally, the seventh factor considers whether the Statute appears excessive in relation to the alternative purpose assigned. It is undisputed that the Statute applies to Kirby. It is also undisputed that there are legitimate, non-punitive purposes of the Statute—public safety and protection of children. The Statute, however, does not consider the seriousness of the crime, the relationship between the victim and the offender, or an initial determination of the risk of re-offending. *See Pollard*, 908 N.E.2d at 1153 (noting that the residentiary restrictions statute that applies to certain sex offenders failed to consider the seriousness of the offender's crime, the relationship between the victim and the offender, or an initial determination of the risk of re-offending). In considering whether the residency restriction statute was unconstitutional as applied to a particular offender, our Supreme Court found that by restricting offenders "without considering whether a particular offender is a danger to the general public, the statute exceeds its non-punitive purposes." *Id.* I believe that this logic applies equally to the Statute.

[36] At the time of Kirby's sentencing, the trial court explicitly granted Kirby permission to enter school property to observe activities involving his son. It is unreasonable to think that the trial court would have made this exception had it believed Kirby to be a danger to society in these limited circumstances. Kirby

entered school property to observe his son's activities for nearly five years before the Statute went into effect; the record does not show that he behaved inappropriately during this time. Also, by the time the Statute went into effect, Kirby had completed all forms of punishment imposed by the trial court except for his continued registration on the sex offender registry.

[37] While I understand the majority's position regarding this factor, I find that to suddenly deny Kirby the opportunity to attend his son's activities—which he could do while completing his punishment through probation—only because of his prior conviction is excessive. As such, I am persuaded that this factor favors treating the effects of the Statute as punitive as applied to Kirby.

[38] After considering each of the above-discussed factors, I would conclude, as did the trial court, that the Statute is unconstitutional as applied to Kirby because it amounts to retroactive punishment in violation of the ex post facto clause of the Indiana Constitution. Therefore, I would affirm.